**STATE of Iowa, Appellant,**

v.

**Lester Tobias LASLEY, Appellee.**

No. 03–1938.

Supreme Court of Iowa.

Oct. 28, 2005.

483

Thomas J. Miller, Attorney General, Donald D. Stanley, Jr., and Brian Meyer, Assistant Attorneys General, Brent D. Heeren, County Attorney, and Richard Vander Mey, Assistant County Attorney, for appellant.

Steven F. Olson and Jeffrey S. Rasmussen of BlueDog, Olson & Small, P.L.L.P., Minneapolis, Minnesota, for appellee.

LAVORATO, Chief Justice.

This proceeding stems from a charge of an alleged sale of cigarettes to an underaged person by an individual on an Indian reservation in violation of Iowa Code section 453A.2(1) (Supp.2001). A magistrate dismissed the charge, concluding that the court lacked subject matter jurisdiction because of Indian sovereign immunity. The State sought discretionary review, which we granted. The Sac and Fox Tribe of the Mississippi in Iowa (Tribe), owner of the establishment where the offense allegedly took place, sought the dismissal. The State contends the magistrate had subject matter jurisdiction and the Tribe has no standing.

The Tribe contends the magistrate correctly determined the court did not have subject matter jurisdiction. In addition, the Tribe contends discretionary review was inappropriate and for that reason we have no jurisdiction to hear the appeal. In the event we conclude there was subject matter jurisdiction for the magistrate to hear the case, the Tribe contends reinstatement and prosecution of the charge is barred.

We conclude we have jurisdiction to hear the appeal, there was subject matter jurisdiction for the magistrate to hear the case, and reinstatement and prosecution of the charge is not barred. Accordingly, we reverse the magistrate's dismissal order and remand for an order reinstating the charge and for further proceedings consistent with this opinion.

I. Background Facts.

On March 13, 2003, an officer with the Tama County Sheriff's department issued an Iowa Uniform Citation and Complaint against Lester Tobias Lasley, charging him with providing tobacco to an underaged person in violation of Iowa Code section 453A.2(1). The Tribe owned the Meskwaki Trading Post, in Tama County, where Lasley was employed and where he allegedly provided the tobacco to the underaged person. The Tribe is a federally

recognized tribal entity. *See* Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs, 67 Fed.Reg. 46,328, 46,330 (July 12, 2002); *see also Sac & Fox Tribe of the Miss. in Iowa v. Licklider,* 576 F.2d 145, 147–50 (8th Cir.1978) (describing history of the Tribe dating back to the 1700s and concluding the land located in Tama County and occupied by the Tribe constitutes an Indian reservation).

Later, Brad S. Jolly, an attorney with a Minnesota law firm, applied for admission pro hac vice. In the application, Jolly represented that he was appearing as counsel for Lasley, "in his status as an employee" of the Tribe, and as counsel for the Tribe. The application further stated that Jolly's law firm had been retained to act as counsel for Lasley "in his status as an employee" of the Tribe and as counsel for the Tribe, including the Tribe's trading post.

Jolly also filed a motion to dismiss for lack of subject matter jurisdiction, alleging that the State of Iowa "lacks civil regulatory jurisdiction" over the Tribe and its reservation.

Following a hearing, Magistrate John J. Willett filed a decision in which the magistrate granted Jolly's application for admission pro hac vice and noted that Jolly was appearing on behalf of the Tribe. The court also noted in its ruling that Jolly argued that this was a civil/regulatory matter and for that reason the State lacked civil/regulatory jurisdiction within the boundaries of the tribal lands. The court further noted that the State argued that because the defendant was an individual in a criminal case, the State had authority to enforce its criminal statutes against him even though the criminal act allegedly took place on land owned by the Tribe. Framing the issue as "whether the lack of subject matter jurisdiction extends to an individual employee of the Tribe," the court dismissed the case for lack of such jurisdiction. The court reasoned that the statutes of Iowa regulating tobacco were in fact regulatory and therefore could not be enforced either against the Tribe or its employees.

The State filed a motion to reconsider and enlarge, asking the court to reconsider its decision that the criminal complaint was regulatory rather than criminal. The State also challenged the Tribe's standing to appear in a criminal case when the defendant in open court acknowledged that he did not ask Jolly to represent him. As to the standing issue, the State asked the court to add the following facts to its decision:

> The Court's recitation of facts regarding the July 30, 2003, hearing fails to make any reference to statements made by the defendant, Lester Lasley, in open court, in the presence of the presiding magistrate and Brad Jolly, counsel for the Tribe, that he did not ask to have an attorney represent him, that attorney Jolly was not his attorney, that he had not asked attorney Jolly or attorney Jolly's law firm to represent him, and, further, that in fact he just wished to plead guilty.

In its ruling on the State's motion to reconsider and enlarge, the court noted that Lasley appeared pro se and wished to have the matter finalized on the date he appeared. However, the court also noted that "it is not that simple. [Lasley] was charged with an act allegedly occurring on tribal lands while [Lasley] was employed by the Tribe in a tribal business operated upon tribal land." The court refused to change its decision as to the jurisdictional question but did grant the State's motion to expand its findings by incorporating the above cited facts regarding Lasley's statements in open court.

The State sought discretionary review, maintaining the charge was criminal/prohibitory rather than civil/regulatory. The State also raised the standing issue it earlier raised before the magistrate. Later, the State filed a supplement to its application that included the expanded findings about Lasley's statements in open court. We granted the State's application over the Tribe's resistance.

## II. Issues.

We consider the following issues: (1) whether the case is appropriately before us on discretionary review, (2) whether the Tribe has standing in the case, (3) whether subject matter jurisdiction is lacking, and (4) whether reversing the dismissal and reinstating the prosecution is the appropriate remedy.

## III. Scope of Review.

■■■ Because the case raises an issue of statutory interpretation, our review is for correction of errors at law. *State v. Wolford Corp.*, 689 N.W.2d 471, 473 (Iowa 2004). In addition, we review proceedings concerning subject matter jurisdiction at law. *Tigges v. City of Ames*, 356 N.W.2d 503, 512 (Iowa 1984).

## IV. Appropriateness of Discretionary Review and Standing.

Because our resolution of both issues turns on the law concerning subject matter jurisdiction, we address them together.

The Tribe contends discretionary review of the State's appeal is inappropriate because the magistrate did not find the statute invalid. The Tribe relies on Iowa Rule of Criminal Procedure 2.73(1) which provides that in simple misdemeanor cases "[a]n appeal may be taken by the plaintiff only upon a finding of invalidity of an ordinance or statute." Iowa R.Crim. P. 2.73(1).

The State sought discretionary review pursuant to Iowa Code section 814.5(2) (2003) which allows the State to seek such review under limited circumstances. The ground the State relies on provides discretionary review may be available when the underlying case resulted in "[a] final judgment or order raising a question of law important to the judiciary and the profession." Iowa Code § 814.5(2)(*d*).

■■■ We need not concern ourselves with the obvious tension between rule 2.73(1) and section 814.5(2) because we are faced here with an issue of Indian sovereignty, which immediately calls into question subject matter jurisdiction. *See Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754, 118 S.Ct. 1700, 1702, 140 L.Ed.2d 981, 985 (1998) ("As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity."); *see also State v. Bear*, 452 N.W.2d 430, 432 (Iowa 1990) (recognizing that Indian sovereignty raises a question of subject matter jurisdiction). "Subject matter jurisdiction may be raised at any time." *Bear*, 452 N.W.2d at 432; *Hyde v. Buckalew*, 393 N.W.2d 800, 802 (Iowa 1986) ("The issue whether the legislature intended to waive its sovereign immunity with respect to a particular type of claim is a matter of [subject matter] jurisdiction, the power of the court to hear and adjudicate a particular class of cases, and the State may raise that issue by motion to dismiss at any stage of the proceeding."). In addition, this court may raise the issue sua sponte. *State ex rel. Vega v. Medina*, 549 N.W.2d 507, 508 (Iowa 1996).

In *Lansky ex rel. Brill v. Lansky*, we noted the importance of resolving jurisdictional issues first, especially those involving subject matter jurisdiction, no matter how the issue is presented:

The general theme of Iowa cases provides that, when a court is confronted with a question of its own authority to proceed, it should take charge of the proceedings affirmatively, regardless of the vehicle used to raise the issue. The court should utilize the most efficient method at its disposal to determine the true facts and then decide the issue promptly. When the court's power to proceed is at issue, the court has the *power* and *duty* to determine whether it has jurisdiction of the matter presented. Subject matter jurisdiction should be considered before the court looks at other matters involved in the case and before it determines whether the parties are entitled to a jury trial. *The court should be less concerned about the form in which the question of subject matter jurisdiction reaches it and more concerned about establishing an efficient, prompt, trustworthy solution, even if innovative and unusual approaches are required to reach the issue.*

449 N.W.2d 367, 368 (Iowa 1989) (emphasis added) (citations omitted).

Although there was some question whether Jolly was in fact representing the defendant, the magistrate never actually made a ruling on that issue. As far as the court was concerned, the important question was whether it had subject matter jurisdiction to hear the matter. The court was not concerned, and nor are we, with how the issue was raised. Because of where the alleged offense occurred—on Indian land and in a trading post belonging to the Tribe—the subject matter jurisdiction issue was so apparent that the court should have and probably would have raised the issue on its own even had Jolly not appeared. Because the subject matter jurisdiction issue is in the case, we are duty bound to address it regardless of whether a statutory provision or rule permitted appeal by the State.

The same reasoning applies to the State's argument that the Tribe had no standing to intervene in this criminal case because it was not a defendant and its attorney had no permission from Lasley to represent him. Whether the Tribe had standing is not determinative because we are not concerned with how the issue of subject matter jurisdiction was raised or who raised it. Again, the issue was so obvious that the court should have and probably would have raised it on its own even had Jolly not appeared.

That brings us to the subject matter jurisdiction issue.

## V. Subject Matter Jurisdiction.

The State contends the statute under which Lasley was charged is criminal/prohibitory, and therefore enforceable against him despite the fact that he was working on an Indian reservation. In contrast, the Tribe contends that the statute is civil/regulatory and therefore provides no subject matter jurisdiction for the prosecution of the charge against Lasley. The Tribe's fall-back position is that the State's attempt to exercise jurisdiction over Lasley is tantamount to an attempt to exercise jurisdiction over the Tribe. For that alternative reason, the Tribe concludes, subject matter jurisdiction is lacking for the prosecution of the charge against Lasley.

■■■ **A. Applicable law.** The Federal Constitution "grants Congress broad general powers to legislate in respect to Indian tribes, powers that [the Supreme Court has] consistently described as 'plenary and exclusive.'" *United States v. Lara,* 541 U.S. 193, 200, 124 S.Ct. 1628, 1633, 158 L.Ed.2d 420, 428 (2004) (citations omitted); *see* U.S. Const. art. I, § 8, cl. 3 (Indian Commerce Clause); U.S. Const. art. II, § 2, cl. 2 (Treaty Clause). In *California v. Cabazon Band of Mission*

*Indians,* the United States Supreme Court reiterated several principles regarding Indian sovereignty:

> Indian tribes retain "attributes of sovereignty over both their members and their territory," and . . . "tribal sovereignty is dependent on, and subordinate to, only the Federal Government, not the States." It is clear, however, that state laws may be applied to tribal Indians on their reservations if Congress has expressly so provided.

480 U.S. 202, 207, 107 S.Ct. 1083, 1087, 94 L.Ed.2d 244, 253 (1987) (citations omitted). Thus, although Indian tribes retain attributes of sovereignty, state laws may be applied to tribal Indians on reservations if Congress grants a state authority to do so.

As applied to this case, Congress has twice expressly provided the State of Iowa jurisdiction to apply its laws to tribal Indians on the Tribe's reservation. In 1948, Congress conferred criminal jurisdiction over offenses committed "by or against Indians on the Sac and Fox Indian Reservation" located in Iowa. Act of June 30, 1948, ch. 759, 62 Stat. 1161. The statute, commonly known as Public Law 846, reads:

> Jurisdiction is hereby conferred on the State of Iowa over offenses committed by or against Indians on the Sac and Fox Indian Reservation in that State to the same extent as its courts have jurisdiction generally over offenses committed within said State outside of any Indian reservation: *Provided, however,* That nothing herein contained shall deprive the courts of the United States of jurisdiction over offenses defined by the laws of the United States committed by or against Indians on Indian reservations.

*Id.*

Interpreting a similar statute by Congress granting similar authority to the State of Kansas, the United States Supreme Court held that the statute confers jurisdiction on both minor and major offenses committed by or against Indians on Indian reservations in accordance with state law. *Negonsott v. Samuels,* 507 U.S. 99, 105, 113 S.Ct. 1119, 1123, 122 L.Ed.2d 457, 465 (1993). The proviso part of the statute simply means that federal courts retain jurisdiction over offenses subject to federal jurisdiction under the Indian Major Crimes Act, while Kansas courts have jurisdiction to try persons for the same conduct when it violates state law. *Id.*

In 1953, Congress enacted what is commonly known as Public Law 280. Act of Aug. 15, 1953, ch. 505, § 2, 67 Stat. 588 (codified as amended at 18 U.S.C.A. § 1162 (2000)); Act of Aug. 15, 1953, ch. 505, § 4, 67 Stat. 589 (codified as amended at 28 U.S.C.A. § 1360 (1993)). Public Law 280 expressly granted six states, not including Iowa, criminal and civil jurisdiction over specified areas of Indian country within the states and provided for the assumption of such jurisdiction by other states. *Id.;* *Cabazon,* 480 U.S. at 207, 107 S.Ct. at 1087, 94 L.Ed.2d at 253–54.

"The primary concern of Congress in enacting Pub.L. 280 that emerges from its sparse legislative history was with the problem of lawlessness on certain Indian reservations, and the absence of adequate tribal institutions for law enforcement." *Bryan v. Itasca County,* 426 U.S. 373, 379, 96 S.Ct. 2102, 2106, 48 L.Ed.2d 710, 715–16 (1976). Section 2, which was the central focus of the Act, granted broad criminal jurisdiction over offenses committed by or against Indians within specified Indian country within the states. *Id.* at 380, 96 S.Ct. at 2107, 48 L.Ed.2d at 716.

Section 4 of the Act gave the enumerated six states "jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in

... Indian country." Act of Aug. 15, 1953, ch. 505, § 4, 67 Stat. 589 (codified as amended at 28 U.S.C.A. § 1360 (1993)). This provision was "primarily intended to redress the lack of adequate Indian forums for resolving private legal disputes between reservation Indians, and between Indians and other private citizens, by permitting the courts of the States to decide such disputes...." *Bryan,* 426 U.S. at 383, 96 S.Ct. at 2108, 48 L.Ed.2d at 718. Section 4 was thus interpreted to grant the courts of the enumerated six states jurisdiction over private civil litigation—such as laws of contract, tort, marriage, divorce, insanity, and descent—involving reservation Indians, but not to grant general civil/regulatory authority over Indian reservations. *Cabazon,* 480 U.S. at 208, 107 S.Ct. at 1087, 94 L.Ed.2d at 254; *Bryan,* 426 U.S. at 383–85 & 384 n. 10, 96 S.Ct. at 2108–09 & 2108 n. 10, 48 L.Ed.2d at 718–19 & 718 n. 10.

Obviously, Iowa did not assume criminal jurisdiction under Public Law 280 because it already had such jurisdiction under Public Law 846. However, Iowa "accepted Congress' invitation" as to section 4 of Public Law 280, relating to civil jurisdiction, "by passing Iowa Code section 1.12 in 1967." *Meier v. Sac & Fox Indian Tribe of the Miss. in Iowa,* 476 N.W.2d 61, 63 (Iowa 1991). Section 1.12 provides:

> The state of Iowa hereby assumes jurisdiction over civil causes of actions between Indians or other persons or to which Indians or other persons are parties arising within the Sac and Fox Indian settlement in Tama county. The civil laws of this state shall obtain on the settlement and shall be enforced in the same manner as elsewhere throughout the state.

Iowa Code § 1.12.

■ For a state law to be enforceable under the criminal offense provision of Public Law 280, such law must be "criminal/prohibitory" and not "civil/regulatory." *Cabazon,* 480 U.S. at 208, 107 S.Ct. at 1088, 94 L.Ed.2d at 254. In *Cabazon,* the Court approved the following test for determining whether a state law is criminal/prohibitory or civil/regulatory:

> [I]f the intent of a state law is generally to prohibit certain conduct, it falls within Pub.L. 280's grant of criminal jurisdiction, but if the state law generally permits the conduct at issue, subject to regulation, it must be classified as civil/regulatory and Pub.L. 280 does not authorize its enforcement on an Indian reservation. The shorthand test is whether the conduct at issue violates the State's public policy.

*Id.* at 209–10, 107 S.Ct. at 1088–89, 94 L.Ed.2d at 254.

The Court made it clear, however, that just because "an otherwise regulatory law is enforceable by criminal as well as civil means does not necessarily convert it into a criminal law within the meaning of Pub.L. 280." *Id.* at 211, 107 S.Ct. at 1089, 94 L.Ed.2d at 256. "Otherwise, the distinction between § 2 [criminal offense provision] and § 4 [civil action provision] of [Public Law 280] could easily be avoided and total assimilation [of Indians] permitted." *Id.* When Congress passed Public Law 280, it had no intention of effecting total assimilation and

> nothing in [Public Law 280's] legislative history remotely suggests that Congress meant the Act's extension of civil jurisdiction to the States should result in the undermining or destruction of such tribal governes as did exist and a conversion of the affected tribes into little more than "'private, voluntary organizations,'" a possible result if tribal governments and reservation Indians were subordinated to the full panoply of civil regulatory powers....

*Bryan,* 426 U.S. at 387–88, 96 S.Ct. at 2110–11, 48 L.Ed.2d at 720–21 (citation omitted).

In *Cabazon,* two tribes in Riverside County, California conducted bingo games on their reservations pursuant to an ordinance approved by the Secretary of the Interior. 480 U.S. at 204–05, 107 S.Ct. at 1086, 94 L.Ed.2d at 252. The county attempted to impose several restrictions through an ordinance on the tribes regarding the playing of bingo inside the reservations. *Id.* at 205–06, 107 S.Ct. at 1086, 94 L.Ed.2d at 252–53. The tribes sued the county in federal district court for declaratory and injunctive relief, alleging the county had no authority to apply ordinances regulating bingo inside the reservations. *Id.* at 206, 107 S.Ct. at 1086, 94 L.Ed.2d at 253. The State intervened, asserting that the bingo games on the two reservations violated a state statute making it a misdemeanor in California to conduct unregulated bingo and insisted that the tribes comply with the law. *Id.* at 205–06, 107 S.Ct. at 1086, 94 L.Ed.2d at 252–53. California was one of the six states that was granted criminal jurisdiction under Public Law 280 over offenses committed by or against Indians within all Indian country within the state. *Id.* at 207, 107 S.Ct. at 1087, 94 L.Ed.2d at 253–54. The trial court held that the state had no authority to enforce its gaming laws within the reservations and granted the tribes' motion for summary judgment, a decision which was affirmed by the ninth circuit. *Id.* at 206, 107 S.Ct. at 1086, 94 L.Ed.2d at 253. The Supreme Court agreed. *Id.* at 222, 107 S.Ct. at 1095, 94 L.Ed.2d at 263. The Court, employing the criminal/prohibitory and civil/regulatory test, held that because California permitted a substantial amount of gambling activity, including bingo, and promoted gambling through its state lottery, the statute and ordinance in question regulated rather

than prohibited gambling in general and bingo in particular. *Id.* at 210–11, 107 S.Ct. at 1088–89, 94 L.Ed.2d at 255–56.

**B. Analysis.** As mentioned, Iowa's jurisdiction over criminal offenses committed by or against Indians on the Tribe's reservation derives from Public Law 846 rather than Public Law 280. Nevertheless, we think we are bound by the *Cabazon* criminal/prohibitory and civil/regulatory analysis under Public Law 280 for two reasons. First, the grant of criminal jurisdiction under Public Law 846—offenses committed by or against Indians on the Sac and Fox Indian Reservation—mirrors the language under section 2 of Public Law 280. And, as mentioned, at the invitation of Congress we accepted through Iowa Code section 1.12, by nearly identical language found in section 4 of Public Law 280, jurisdiction over civil causes of actions. In *State ex rel. Department of Human Services v. Whitebreast,* we employed the *Cabazon* test in deciding that the State's action through its Child Support Recovery Unit to collect reimbursement for aid paid on behalf of an Indian child from an Indian father was not a private civil action within the meaning of Iowa Code section 1.12 but rather grew out of the State's public, regulatory duty to recover from the Indian father. 409 N.W.2d 460, 463 (Iowa 1987). For these reasons, we see no difference in the scope and intent of the grant of authority regarding criminal jurisdiction to Iowa in Public Law 846 and our acceptance of Congress's invitation to accept civil jurisdiction in Iowa Code section 1.12 from that contained in Public Law 280.

Second, but most important, the *Cabazon* test ensures against the undermining or destruction of tribal self-government, a result that would seriously erode what is left of Indian sovereignty. The test also ensures against *total* assimilation, which

Congress to this date has not expressed any desire to accomplish.

■ With the *Cabazon* test in mind, we proceed to determine whether the statute under which Lasley was charged is criminal/prohibitory or civil/regulatory. In doing so, we heed the Court's admonition in *Cabazon,* that the particular State law in question in any given case must be given individual and detailed examination before it can be characterized as either criminal/prohibitory or civil/regulatory. *Cabazon,* 480 U.S. at 211 n. 10, 107 S.Ct. at 1089 n. 10, 94 L.Ed.2d at 256 n. 10. To us that means that we must analyze the statute under which Lasley was charged and the specific conduct it governs before we can draw any conclusions.

The statute under which Lasley was charged provides: "A person shall not sell, give, or otherwise supply any tobacco, tobacco products, or cigarettes to any person under eighteen years of age." Iowa Code § 453A.2(1) (Supp.2001). The applicable penalty provision states: "An employee of a retailer who violates section 453A.2, subsection 1, commits a simple misdemeanor punishable as a scheduled violation under section 805.8C, subsection 3, paragraph '*b*'." *Id.* § 453A.3(1)(*b*). Scheduled fine amounts, which increase as the number of offenses increase, are provided in Iowa Code section 805.8C(3)(*b*)(1)-(3). No one disputes that section 453A.2(1) is a public offense punishable through criminal prosecution and therefore criminal in nature. The question remains however whether, notwithstanding this fact, this statute is part of a regulatory scheme and is for that reason civil/regulatory.

As mentioned, Public Law 846 grants the State of Iowa jurisdiction over offenses committed *by or against Indians* on the Sac and Fox Indian Reservation in Iowa. Although the record does not reveal whether Lasley is an Indian, no one claims he is not. If the record were otherwise, the State of Iowa would apparently have jurisdiction. *See United States v. John,* 587 F.2d 683, 686 (5th Cir.1979) (when neither the offender nor the victim are Indians, there is no basis for federal jurisdiction, so that the crime will be tried in state court according to state law). We proceed on the basis that Lasley is an Indian belonging to a federally recognized tribal entity.

That brings us to the decisive issue: Is Iowa Code section 453A.2(1) criminal/prohibitory and therefore enforceable in state court under Public Law 846? Or is the statute civil/regulatory and therefore outside the State's jurisdiction? For reasons that follow, we think the statute is criminal/prohibitory.

We first note that the statute does not merely regulate the sale of tobacco. Rather, it *absolutely* prohibits one from furnishing in any manner any tobacco, tobacco products, or cigarettes to any person under eighteen years of age. Iowa Code § 453A.2(1). So the intent of the law is generally to prohibit certain conduct—the hallmark under the *Cabazon* test for establishing that a statute is criminal/prohibitory. Moreover, as the State points out, selling cigarettes to an underaged person anywhere in Iowa violates the State's public policy because there is a statute absolutely forbidding it—another hallmark under the *Cabazon* test for establishing that a statute is criminal/prohibitory. *See* Iowa Code § 142A.1(2) (stating the purpose of Iowa Code chapter 142A is to establish a "comprehensive tobacco use prevention and control initiative" to specifically address "reduction of tobacco use by youth and pregnant women, promotion of compliance by minors and retailers with tobacco sales laws and ordinances, and enhancement of the capacity of youth to make healthy choices"). The public policy in this

state now recognizes the health hazards of cigarette smoking as to all citizens of this state, not just underaged persons. *See* Iowa Code ch. 142B (prohibiting smoking in certain public places and imposing a civil fine for a violation of the statute). Section 453A.2(1) was not simply intended to *regulate* conduct occurring on the Tribe's reservation. Rather it represents the legislature's exercise of its police power by way of a criminal statute to protect underaged persons from the harmful consequences resulting from tobacco usage and to prohibit distribution of tobacco products to underaged persons on the reservation in the same manner as such conduct is prohibited elsewhere in the State. *See Austin v. Tennessee*, 179 U.S. 343, 348–49, 21 S.Ct. 132, 134, 45 L.Ed. 224, 228 (1900) (noting the potential of "deleterious effects" of cigarettes and determining that it is within the province of the legislature to prohibit their sale entirely provided such act is designed for protection of public health).

The Tribe's attempt to compare the facts here to those in *Cabazon* favorable to the Tribe fails to convince us that the statute is civil/regulatory. True, the rationale for the *Cabazon* decision was the fact that the State of California permitted and even encouraged gambling in the State. Under the Tribe's interpretation of this rationale, simply because the State of Iowa allows the sale of cigarettes, it cannot prohibit the sale of cigarettes to underaged persons on the reservation. But, as the State points out, a closer reading of *Cabazon* shows that the Court found significant that there was no effort to forbid the playing of bingo by any member of the public *over the age of 18*. *Cabazon*, 480 U.S. at 211, 107 S.Ct. at 1089, 94 L.Ed.2d at 256. *Cabazon* does not support the proposition that because selling cigarettes to adults is permitted throughout the state, it follows that sale of cigarettes to

underaged persons on the Tribe's reservation should be permitted. .

We note that the Court in *Cabazon* cited with approval *United States v. Marcyes*, 557 F.2d 1361 (9th Cir.1977) as an example of lower courts demonstrating an ability to identify prohibitory laws. *Cabazon*, 480 U.S. at 211 n. 10, 107 S.Ct. at 1089 n. 10, 94 L.Ed.2d at 256 n. 10. The ninth circuit adopted and applied the prohibitory/regulatory distinction in determining whether a state law governing the possession of fireworks was made applicable to Indian reservations by the Assimilative Crimes Act, 18 U.S.C. § 13. *Marcyes*, 557 F.2d at 1363–65. The court concluded that even though there were limited exceptions to the statute's prohibition, the fireworks law was prohibitory in nature. *Id.* at 1364. Relying on public policy, the court in *Marcyes* reasoned that

> [t]he possession of fireworks is not the same situation encountered in other regulatory schemes such as hunting or fishing, where a person who wants to hunt or fish merely has to pay a fee and obtain a license. The purpose of such statutes is to regulate the described conduct and to generate revenues. In contrast, the purpose of the fireworks laws is not to generate income, but rather to prohibit their general use and possession in a legitimate effort to promote the safety and health of all citizens. Moreover, by allowing appellants to operate their stands on the reservation or in any federal enclave would entirely circumvent Washington's determination that the possession of fireworks is dangerous to the general welfare of its citizens.

*Id.*

Likewise providing tobacco products to underaged persons is not the same situation encountered in true regulatory schemes in which the purpose is to regu-

late conduct and raise revenue. That is not the purpose behind the statute in question. Rather the purpose is to strictly prohibit the conduct proscribed by the statute in order to promote the safety and health of all underaged persons. Allowing the sale of tobacco products to underaged persons on the Tribe's reservation would circumvent the legislature's determination that furnishing such products in any manner to underaged persons is dangerous to the health of such persons. *Cf. State v. Robinson*, 572 N.W.2d 720, 722–24 (Minn.1997) (applying *Cabazon* test with additional analytical considerations in concluding underage drinking statute was criminal/prohibitory as against state public policy of protecting both minors and the public from physical and other injuries resulting from alcohol consumption, despite fact that such sales under proper regulation are allowed to be made to adults).

As mentioned, the Tribe has a fall-back position. The Tribe argues as follows:

> The very nature of the offense itself requires the individual to be acting in some capacity as a seller of tobacco products. In this case, Mr. Lasley's capacity to sell tobacco products exists only because he is an employee of the Tribe's subordinate economic enterprise. Therefore, the attempt to exercise jurisdiction over Mr. Lasley is tantamount to an attempt to exercise jurisdiction over the Tribe itself.

The Tribe cites no authority to support this contention. More important, the State charged Lasley, not the Tribe, with violating Iowa Code section 453A.2. The sanctions for licensed retailers who violate section 453A.2 include revocation of permit, *see* Iowa Code § 453A.22(1), and penalties, *see* Iowa Code § 453A.22(2).

## VI. Remedy.

The Tribe contends that in the event we reverse the magistrate's dismissal, the law does not permit reinstatement of the prosecution. In support of its contention, the Tribe relies on Iowa Rule of Criminal Procedure 2.33(1).

Rule 2.33(1) provides:

> The court, upon its own motion or the application of the prosecuting attorney, in the furtherance of justice, may order the dismissal of any pending criminal prosecution, the reasons therefor being stated in the order and entered of record, and no such prosecution shall be discontinued or abandoned in any other manner. Such a dismissal is a bar to another prosecution for the same offense if it is a simple or serious misdemeanor; but it is not a bar if the offense charged be a felony or an aggravated misdemeanor.

Iowa R.Crim. P. 2.33(1). Clearly, this rule does not support the Tribe's contention because the dismissal did not result from the magistrate's or the prosecutor's motion, but rather on the motion of the Tribe. *See State v. Fisher*, 351 N.W.2d 798, 801 (Iowa 1984) (only the court or the prosecutor may move to dismiss pursuant to rule 2.33(1); rule 2.33(1) "is not available to a defendant").

Moreover, the rule lists only one ground for dismissal: "in the furtherance of justice." Iowa R.Crim. P. 2.33(1). Appropriate reasons to dismiss under this rule "include[] 'facilitating the State in gathering evidence, procuring witnesses, or plea bargaining.'" *Fisher*, 351 N.W.2d at 801 (citation omitted). The magistrate gave none of these reasons for the dismissal; the dismissal was purely on the grounds of lack of subject matter jurisdiction. In addition, even if this were a 2.33(1) dismissal, the erroneous dismissal of the case is not a bar to prosecution. *See State v. Hartley*, 549 N.W.2d 794, 795–

96 (Iowa 1996) (evaluating dismissal of a serious misdemeanor pursuant to rule 27(1) [now 2.33(1) ] and concluding as follows: "We have held that an erroneous dismissal prior to a defendant's being placed in jeopardy does not prevent future prosecution."). Here there was an erroneous dismissal, and the dismissal came before Lasley was ever put in jeopardy. "Jeopardy does not attach until a defendant is put to trial before the trier of facts, whether the trier be a jury or a judge." *State v. Beecher*, 616 N.W.2d 532, 536 (Iowa 2000). In a trial by jury, jeopardy attaches when the jury is empanelled and sworn. *Id.* In a bench trial, jeopardy attaches when the judge begins to receive evidence. *Id.* Neither event had occurred here when the court entered its dismissal order.

## VII. Disposition.

In sum, we conclude the appeal is properly before us and it matters not whether the Tribe has standing because subject matter jurisdiction requires us to determine whether we have jurisdiction regardless how the issue was raised. We further conclude that the statute under which Lasley was charged is criminal/prohibitory, which means the magistrate has subject matter jurisdiction to hear the case. We therefore reverse the magistrate's decision to the contrary. We remand for further proceedings because there is no bar to reinstatement and prosecution of the charge. In reaching our decision, we have carefully considered all of the arguments and contentions of the parties. Those we have not addressed either lack merit or were not properly raised for our review.

**REVERSED AND CASE REMANDED.**