## IN THE COURT OF APPEALS OF IOWA

No. 13-1656
Filed February 11, 2015

**MICHAEL YOUNG,**
     Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
     Respondent-Appellee.
_____

     Appeal from the Iowa District Court for Tama County, Mary E. Chicchelly, Judge.


     Petitioner appeals the dismissal of his application for postconviction relief.

**AFFIRMED.**


     Michael Young, Tama, appellant pro se.

     Thomas J. Miller, Attorney General, Kyle Hanson, Assistant Attorney General, Brent D. Heeren, County Attorney, and Patrick McMullen, Assistant County Attorney, for appellee.


     Considered by Mullins, P.J., and Bower and McDonald, JJ.

**MCDONALD, J.**

Michael Young, an enrolled member of the Sac and Fox Tribe of the Mississippi in Iowa, was convicted of operating a motor vehicle without a license, a simple misdemeanor, in violation of Iowa Code section 321.174 (2009). He challenged his conviction and sentence in a postconviction-relief proceeding, arguing the district court lacked jurisdiction to impose judgment and sentence for this offense on an enrolled member of the Sac and Fox Tribe occurring on the roadway of an Indian Reservation Road. The district court denied Young's application for postconviction reflief, and Young filed this appeal. We affirm the judgment of the district court.

I.

A criminal defendant may raise a jurisdictional challenge to his conviction and sentence in postconviction-relief proceedings. Iowa Code § 822.2(1)(b). "[W]e review proceedings concerning subject matter jurisdiction at law." *State v. Lasley*, 705 N.W.2d 481, 485 (Iowa 2005).

II.

"Subject matter jurisdiction is the power of a court to hear and determine cases of the general class to which the proceedings in question belong, not merely the particular case then occupying the court's attention." *Klinge v. Bentien*, 725 N.W.2d 13, 15 (Iowa 2006) (citations and internal quotations omitted). "Lack of subject matter can be raised at any time." *Id.* at 16. "If a court enters a judgment without jurisdiction over the subject matter, the judgment is void and subject to collateral attack." *Id.*

Iowa has a unified trial court denominated "The Iowa District Court." Iowa Code § 602.6101. "The district court has exclusive, general, and original jurisdiction of all actions, proceedings, and remedies, civil, criminal . . . except in cases where exclusive or concurrent jurisdiction is conferred upon some other court, tribunal, or administrative body." Iowa Code § 602.6101.

One such exception to the district court's jurisdiction over criminal proceedings relates to offenses committed by or against Indians on an Indian reservation. "Indian tribes retain 'attributes of sovereignty over both their members and their territory.'" *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 207 (1987). "[T]ribal sovereignty is dependent on, and subordinate to, only the federal government, not the States." *Id.* Because the Federal Constitution grants Congress plenary and exclusive power to legislate with respect to Indian tribes, a State may exercise jurisdiction related to offenses committed by or against tribal Indians for conduct occurring on an Indian reservation only if Congress has granted the authority to do so. *See Lasley*, 705 N.W.2d at 486-87.

In 1948, Congress conferred criminal jurisdiction over offenses committed "by or against Indians on the Sac and Fox Indian Reservation" located in Iowa. Act of June 30, 1948, ch. 759, 62 Stat. 1161. This statute, known as Public Law 846, provides as follows:

> Jurisdiction is hereby conferred on the State of Iowa over offenses committed by or against Indians on the Sac and Fox Indian Reservation in that State to the same extent as its courts have jurisdiction generally over offenses committed within said State outside of any Indian reservation: Provided, however, That nothing herein contained shall deprive the courts of the United States of

jurisdiction over offenses defined by the laws of the United States committed by or against Indians on Indian reservations.

*Id.* The text of Public Law 846 appears to confer jurisdiction on the State of Iowa to enforce both minor and major offenses committed by or against Indians on the Sac and Fox Indian Reservation in accord with state law. *See id.*; *see also Lasley*, 705 N.W.2d at 487; *State v. Bear*, 452 N.W.2d 430, 434 (Iowa 1990). However, relying on *California v. Cabazon Band of Mission Indians*, 480 U.S. at 202 (1987), the Iowa Supreme Court has held that "[f]or a state law to be enforceable" under Public Law 846, "such law must be 'criminal/prohibitory' and not 'civil/regulatory.'" *Lasley*, 705 N.W.2d at 488. "If the intent of a state law is generally to prohibit certain conduct, it falls within . . . [the] grant of criminal jurisdiction, but if the state law generally permits the conduct at issue, subject to regulation, it must be classified as civil/regulatory and [the grant of authority] does not authorize its enforcement on an Indian reservation." *Cabazon*, 480 U.S. at 209.

Young argues that operating a motor vehicle without a license, a simple misdemeanor, is a civil/regulatory offense and thus not enforceable under Public Law 846. The State counters that the offense is criminal/prohibitory and thus enforceable under Public Law 846. While we conclude the State has the better of the argument, *see, e.g.*, *St. Germaine v. Circuit Ct.*, 938 F.2d 75, 78 (7th Cir. 1991) (holding driver's license law enforceable in tribal territory and stating "[t]his enforcement of Wisconsin driver's license public policy by the imposition of criminal sanctions does not impinge upon the respected tribal attributes of sovereignty over both their members and their territory"), we need not address

this particular argument because Young has not established the offense was committed on the Sac and Fox Indian Reservation. In the absence of such proof, the State was free to enforce its criminal law against Young, and the district court had concomitant subject matter jurisdiction over the criminal proceeding.

The State has the burden of proving the situs of the offense was within the State of Iowa, which it did. The offense occurred at or near the intersection of Highway 30 and F Avenue in Tama County, Iowa. Once the State proved the offense occurred within the State of Iowa and the district court had subject matter jurisdiction over the matter, it was the defendant's burden to establish an exception to jurisdiction. *See Meier v. Sac & Fox Indian Tribe*, 476 N.W.2d 61, 62-63 (Iowa 1991) (explaining the district court had subject matter jurisdiction over civil actions and that sovereign immunity was an exception to jurisdiction); *see also State v. Verdugo*, 901 P.2d 1165, 1168 (Ariz. 1995) (holding defendant bears the burden of establishing Indian status and that the crime occurred in Indian country to "establish the trial court's lack of jurisdiction"); *State v. Francis*, 563 A.2d 249, 252-53 (Vt. 1989) (holding the defendant has the burden of establishing Indian heritage and the offense occurred within "Indian country"); *Pendleton v. State*, 734 P.2d 693, 695 (Nev. 1987) (stating "defendant has the burden of showing the applicability of negative exceptions in jurisdictional statutes"); *State v. Cutnose*, 532 P.2d 896, 898 (N.M. 1974) (holding defendants bear the burden of proving a lack of state court jurisdiction); *State v. Buckaroo Jack*, 96 P. 497, 498 (Nev. 1908) (holding it was not incumbent on the State to prove anything more than that the offense was committed in the county and

defendant had the burden to prove facts depriving the state court of jurisdiction). Here, there is no evidence establishing the situs of the offense was within the reservation.

The Sac and Fox Indian Reservation is also known as the Meskwaki Settlement. It is a "reservation" for purposes of federal law. *See Sac & Fox Tribe v. Licklider*, 576 F.2d 145, 150 (8th Cir. 1978); *United States v. Papakee*, 485 F. Supp. 2d 1032, 1040 (N.D. Iowa 2007). The postconviction court received into evidence a document entitled "Sac and Fox Tribe of the Mississippi in Iowa Long Range Transportation Plan." The document identifies both Highway 30 and F Avenue as included within the inventory of "Indian Reservation Roads." Both Young and the State seem to assume this establishes the situs of the offense occurred within the reservation. We disagree.

First, Young assumes all roads within the Indian Reservation Road System are within the Meskwaki Settlement. This is not the case. An "Indian Reservation Road . . . means a public road that is located within or provides access to an Indian reservation or Indian trust land, or restricted Indian land that is not subject to fee title alienation without the approval of the Federal government." 25 C.F.R. § 170.5. The federal regulation defining an Indian Reservation Road thus explicitly provides that an Indian Reservation Road may be within an Indian reservation or a road not within an Indian reservation but that provides access to an Indian reservation. *Id.* We cannot assume the road is within the reservation.

Second, even assuming that the situs of the offense was within the recognized boundaries of the Meskwaki Settlement, that fact alone would not necessarily deprive the district court of subject matter jurisdiction over this offense. It is well established that a state retains jurisdiction over fee lands it owns within a reservation. *See Washington v. Confederated Bands and Tribes of Yakima Indian Nation*, 439 U.S. 463, 475 (1979); *State v. Pink*, 185 P.3d 634, 638 (Wash. Ct. App. 2008). Here, the offense occurred on a roadway. There is no evidence establishing title to the roadway. The Long Range Transportation Plan explicitly provides that the Indian Reservation Road System includes "BIA [Bureau of Indian Affairs], Tribal, state, and county roads." Young did not establish what entity holds the fee for the roadway on which this offense occurred. Was the fee held by the federal government, state government, county government, or the tribe? Was it a right of way easement granted by the tribe to the State? The answer to each of these questions is material to the jurisdictional issue. *See Murphy v. State*, 124 P.3d 1198, 1201 (Okla. Crim. App. 2005) (examining title of roadway to determine "Indian country" jurisdiction issue); *Pink*, 185 P.3d at 638 (concluding where the land granted was a fee simple patent to build a road as opposed to a right of way easement, then the state has jurisdiction over the offense but where the only interest granted was a right-of-way easement, then the tribe has jurisdiction); *State v. Webster*, 338 N.W.2d 474, 480-81 (Wis. 1983) (examining title to land underlying highway right-of-way to resolve "Indian country" jurisdictional challenge); *Somday v. Rhay*, 406 P.2d 931, 934 (Wash. 1965) (holding court had jurisdiction over offense committed

upon highway where fee simple was in the state). Again, we cannot assume the answers to these questions. Young failed to establish the predicate facts necessary to divest jurisdiction over this offense from the State of Iowa.

III.

We have considered all of the parties' arguments, whether or not set forth explicitly herein. For the foregoing reasons, the judgment of the district court is affirmed.

**AFFIRMED.**