**IN THE COURT OF APPEALS OF IOWA**

No. 15-0970
Filed June 15, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DESTIN RAY CARROLL,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Sioux County, Robert J. Dull, District Associate Judge.

The State appeals a district court ruling suppressing evidence gained during a vehicle stop and dismissing a charge of operating a motor vehicle while intoxicated (first offense). **AFFIRMED.**

Thomas J. Miller, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellant.

Mark C. Smith, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellee.

Considered by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**VAITHESWARAN, Judge.**

The State appeals a district court ruling suppressing evidence gained during a vehicle stop and dismissing a charge of operating a motor vehicle while intoxicated (first offense).

## I.    *Background Facts and Proceedings*

An Orange City police officer stopped Destin Carroll for speeding.  Carroll told the officer he did not have his driver's license but remembered the number.  The officer commented that Carroll "seem[ed] kind of nervous."  She asked Carroll to "step back" to her patrol car and told him she would just give him a warning.

After inputting Carroll's license number, the officer brought up his criminal history.  She noted that he had two citations for failure to stop at stop signs and a citation for driving with a suspended license.

The officer proceeded to ask Carroll, "So why are you really nervous?"  He responded, "I'm not nervous at all."  She pointed out, "You're shaking."  Carroll answered, "I'm not shaking . . . .  I don't know, that's just how my hands are, I guess."  The officer then asked what Carroll had "ingested in the last twenty-four hours."  Carroll responded, "Coca-cola . . . .  That's it."  The officer commented, "That's pretty hard to believe right now."  Do you mind if I search your vehicle then?"  Carroll responded, "Yes, I do mind."

Approximately ten minutes into the stop, the officer sought additional law enforcement assistance.[1]  She continued conversing with Carroll, stating that if

---

[1] We cannot discern an explicit request for a drug dog.  We glean the timing of the request from the context of the recorded conversation.

he had nothing to hide he would have nothing to worry about. She again asked Carroll why he was shaking.

Minutes later, another officer arrived with a drug dog. The dog circled the car Carroll had been driving and alerted the officer to the presence of drugs in the car. Carroll was placed under arrest. The stop lasted for approximately forty-five minutes.

The State charged Carroll with operating a motor vehicle while intoxicated, first offense, in violation of Iowa Code section 321J.2 (2013). Carroll filed a motion to suppress the evidence and statements obtained in connection with the stop, asserting "[t]here was no probable cause to expand the scope of the detention . . . beyond the purpose of the initial stop." Following a hearing, the district court granted Carroll's motion to suppress and dismissed the charge. The State appealed.

## II. Suppression Ruling

Resolution of this appeal is governed by the Fourth Amendment to the United States Constitution, which prohibits law enforcement officers from conducting unreasonable searches and seizures. *See State v. Tyler*, 830 N.W.2d 288, 291 (Iowa 2013). A traffic stop is a seizure under the Fourth Amendment. *Id.* at 292.

Carroll does not contest the initial traffic stop, nor could he, because a speeding violation affords an officer probable cause to stop a vehicle without a search warrant. *Id.* He reiterates that the officer unconstitutionally prolonged the stop. Carroll relies on *Rodriguez v. United States*, 135 S. Ct. 1609, 1616 (2015), which applied the Fourth Amendment to a similar fact pattern.

In *Rodriguez*, a police officer pulled over a vehicle for driving on a highway shoulder. 135 S. Ct. at 1613. The officer made inquiries of the defendant and, in time, began writing a warning ticket. *See id.* At this juncture, he retrieved and walked his dog around the defendant's vehicle. The dog alerted to the presence of drugs. "All told, seven or eight minutes . . . elapsed from the time [the officer] issued the written warning until the dog indicated the presence of drugs." *Id.*

The United States Supreme Court framed the issue and holding as follows: "This case presents the question whether the Fourth Amendment tolerates a dog sniff conducted after completion of a traffic stop. We hold that a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Id.* at 1612. The Court provided the following reasoning:

> A seizure for a traffic violation justifies a police investigation of that violation. . . . [T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's "mission"—to address the traffic violation that warranted the stop, and attend to related safety concerns. Because addressing the infraction is the purpose of the stop, it may "last no longer than is necessary to effectuate th[at] purpose." *Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed.*

*Id.* at 1614 (citations omitted) (emphasis added). The Court explicated the tasks tied to a traffic infraction as "determining whether to issue a traffic ticket" and "ordinary inquiries incident to [the traffic] stop," which typically would include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *See id.* The Court contrasted these inquires to a dog sniff, which was "a measure aimed at 'detect[ing] evidence of ordinary criminal

wrongdoing.'" *Id.* (citation omitted). In the majority's view, "a dog sniff is not fairly characterized as part of the officer's traffic mission." *Id.* Responding to a dissent, the majority stated, "[T]he critical question, then, is not whether the dog sniff occurs before or after the officer issues a ticket, . . . but whether conducting the sniff 'prolongs'—i.e., adds time to—'the stop.'" *Id.* at 1616. The court remanded the case for a determination of "whether reasonable suspicion of criminal activity justified detaining Rodriguez beyond completion of the traffic infraction investigation." *Id.* at 1616-17.

The State contends *Rodriguez* is inapposite. Conceding "[p]olice may not . . . unduly prolong detention of an individual stopped for a traffic violation," the State suggests there was no delay. Alternatively, the State asserts the officer had "additional suspicion of wrongdoing" that warranted "expansion of the stop." On our de novo review of this constitutional issue, which is aided by a patrol car recording, we disagree with both contentions.

After stopping Carroll, the officer determined she would only give him a warning ticket. Because Carroll gave her his license number, she could have immediately returned to her vehicle and processed the ticket without him. She bypassed this option, choosing instead to take Carroll with her.

We recognize the officer's decision to have Carroll accompany her to the patrol car was permissible. *See State v. Aderholdt*, 545 N.W.2d 559, 563-64 (Iowa 1996) (noting reasonable investigation included requesting that the driver sit in the patrol car). But the officer went further. While putatively processing Carroll's license, the officer attempted to elicit a confession that he used drugs. Carroll did not oblige.

The officer persisted in her investigation of general criminal activity. She asked to search Carroll's vehicle and, when Carroll declined, she called a drug dog.

The officer's actions exceeded the scope of "inquiries incident to the traffic stop." *Rodriguez*, 135 S. Ct. at 1615; *cf. Aderholdt*, 545 N.W.2d at 564 (stating the defendants' detention for approximately fifty minutes while the trooper summoned a drug dog and tow truck did not exceed the reasonable scope of the initial stop). As the Iowa Supreme Court recently stated in an opinion with strikingly similar facts,

> [The trooper] had all the information he needed to prepare warnings and had told the vehicle occupants he was only going to issue warnings. By [his own] admission, he could have gone back to his patrol car at that point and completed his traffic-related mission without [the driver's] or [the passenger's] involvement except for a signature on the warning citations. Instead, he asked [the driver] to come with him.

*In re Pardee*, 872 N.W.2d 384, 396 (Iowa 2015). In *Pardee*, the court concluded the trooper "developed reasonable suspicion of other criminal activity—if at all— only by prolonging the initial stop beyond the time reasonably necessary to execute the traffic violation warnings." *Id.* at 391. The same holds true here. The Orange City police officer impermissibly prolonged the stop of Carroll's vehicle.

Certain facts cited by the State in support of a contrary conclusion are unavailing. Carroll's inability to provide a driver's license did not impede the officer's ability to process the ticket because Carroll remembered and furnished the license number. Notably, the officer received a display of Carroll's criminal

history within six minutes of the stop, yet kept Carroll in the vehicle for another ten minutes.

As for the State's suggestion that the delay occurred because the officer needed to make arrangements for the passenger to drive Carroll's vehicle, those arrangements were made twenty minutes into the stop, after the drug dog arrived.

We turn to whether individualized suspicion would have existed without the delay. *See Pardee*, 872 N.W.2d at 396. The State cites the officer's repeated observations of Carroll's nervousness, including his shaking hands. But, as the officer acknowledged, most people would be nervous if stopped by police and the fact Carroll continued to exhibit signs of nervousness could be attributed to the officer's grilling Carroll about his possible drug use. *See United States v. Guerrero*, 374 F.3d 584, 590 (8th Cir. 2004) ("[I]t cannot be deemed unusual for a person to exhibit signs of nervousness when confronted by an officer.").

The State also cites the officer's testimony at the suppression hearing that Carroll had "bloodshot, watery eyes." This observation was not noted in the patrol car recording. The only evidence of possible impairment—which was not mentioned or used by the State—came thirty-four minutes into the recording, after the drugs were discovered and after the officer placed Carroll under arrest. At this juncture, the officer inexplicably administered field sobriety tests to "make sure" Carroll was not impaired to drive, even though she had advised Carroll he could not drive without his license. We conclude the testimony concerning "bloodshot, watery eyes" did not furnish reasonable suspicion to extend the stop.

8

Because the officer impermissibly prolonged the stop after the purpose of the stop had ended and because the officer lacked reasonable suspicion to expand the scope of the stop, we conclude the district court acted appropriately in suppressing evidence gained in the stop. Contrary to the State's assertion, the suppression ruling covered statements made by Carroll during the stop and physical evidence gained following the dog sniff.

We affirm the district court's suppression ruling.

The State also argues, "[i]f the court's ruling suppressing the physical evidence from the stop is erroneous, the dismissal of the prosecution is also erroneous." In light of the State's conditional argument on the dismissal ruling, we affirm the dismissal of the operating while intoxicated charge.[2]

**AFFIRMED.**

---

[2] In *State v. McIntosh*, No. 05-0586, 2006 WL 133247, at *1 (Iowa Ct. App. Jan. 19, 2006), the State appealed the grant of a motion to suppress and the sua sponte dismissal of an OWI charge, arguing "the court did not give any reason for its action, and the only remedy for an unconstitutional search or seizure is exclusion of the resulting evidence." We concluded the district court should not have sua sponte dismissed the prosecution in the absence of a motion to dismiss even if "it may well be that the State will be unable to proceed with this prosecution because of a lack of evidence." *McIntosh*, 2006 WL 133247, at *3. We did not address Iowa Rule of Criminal Procedure 2.33(1), which authorizes dismissal by the district court "in the furtherance of justice," most likely because the district court gave no reasons for the dismissal, let alone reasons covered by the rule. *See State v. Lasley*, 705 N.W.2d 481, 492 (Iowa 2005).

As in *McIntosh*, Carroll did not file a motion to dismiss, and the district court sua sponte dismissed the prosecution without setting forth reasons. But unlike *McIntosh*, the State failed to argue for unconditional reversal of the dismissal order. We decline to reverse the dismissal order on our own motion without argument or citation to persuasive or binding authority.