Lou SKOKOS, Joan Lally, Norman Dean, Robert Rehermann, Ray Miller, Paul Soren, and Frank Caputo, on behalf of themselves and all others similarly situated, Plaintiffs and Appellants,

v.

DeeDee CORRADINI, Mayor of Salt Lake City; Roger F. Cutler, City Attorney; Roger Black, Director of Management Services; Alan G. Hardman, Ronald J. Whitehead, Paul Hutchison, Nancy K. Pace, Tom Godfrey, Roselyn N. Kirk, and Don C. Hale, Members of the Salt Lake City Council; and Salt Lake City Corporation, a municipality, Defendants and Appellees.

No. 950032–CA.

Court of Appeals of Utah.

July 20, 1995.

John Michael Coombs, Salt Lake City, for appellants.

Steven W. Allred, Bruce R. Baird and Randall K. Edwards, Salt Lake City, for appellees.

Before ORME, BILLINGS and WILKINS, JJ.

ORME, Presiding Judge:

Appellants Lou Skokos, Joan Lally, Norman Dean, Robert Rehermann, Ray Miller, Paul Soren, and Frank Caputo (the Golfers) appeal the trial court's dismissal of their complaint against Salt Lake City Corporation, Mayor DeeDee Corradini, Salt Lake City Council members, and other city officers (the City). Having determined that "[t]he facts and legal arguments are adequately presented in the [memoranda submitted in lieu of] briefs and record and the decisional process would not be significantly aided by oral argument," Utah R.App.P. 29(a)(3), we reverse and remand.

## FACTS

The Golfers are residents of Salt Lake City who regularly use the golf courses owned and operated by the City. In September 1993, they filed a nine-count class action complaint against the City. Essentially, the Golfers alleged that the City has misused and mismanaged revenue generated by its golf operations in order to meet other obligations for unrelated parks and recreation expenses. The Golfers contested the City's disbanding of the "Golf Enterprise Fund" in order to create a new "Recreation Enterprise Fund" for administration of all parks and recreation operations, arguing that such a scheme places an unfair burden on the fee-paying users of City-owned golf courses.

The City filed a motion to dismiss, alleging, inter alia, that the complaint was based on nonjusticiable political questions concerning discretionary fiscal decisions that were within the exclusive operational domain of the City. The Golfers opposed the motion. At the motion hearing, the trial court was unable to understand either the nature of the Golfers' claims or the City's basis for dismissal for each of the nine claims, and ordered both parties to file memoranda clarifying their positions. Accordingly, the Golfers filed a memorandum stating the nature of their claims, the City filed a memorandum responding to each of the claims, and both parties submitted memoranda on the political question issue.

Thereafter, the trial court issued an order dismissing the Golfers' claims, ruling that the issues raised were "political questions not properly resolved by the Judiciary." In its summary decision, the court stated that

plaintiffs object to the manner in which the City operates, maintains, constructs and finances golf courses and other recreational facilities. The purported factual allegations, however, do not demonstrate how the specified statutory provisions were violated. It appears that plaintiffs really seek to change the venue of City operations from City Hall to the courthouse. The issues plaintiffs raise are truly political issues to be resolved by city government and should remain in City Hall.

The Golfers now appeal the trial court's order of dismissal.

## ISSUE AND STANDARD OF REVIEW

The sole issue on appeal is whether the trial court correctly dismissed the Golf-

ers' complaint because it presented only non-justiciable political questions. Because courts lack subject matter jurisdiction in "the absence of a justiciable controversy," *Williams v. University of Utah*, 626 P.2d 500, 502 (Utah 1981), we review the trial court's decision regarding such jurisdiction under a correction of error standard, according the trial court no particular deference. *Burns Chiropractic Clinic v. Allstate Ins. Co.*, 851 P.2d 1209, 1211 (Utah App.1993).

## ANALYSIS

### 1. The Political Question Doctrine

■ The political question doctrine, rooted in the United States Constitution's separation-of-powers premise, prevents judicial interference in matters wholly within the control and discretion of other branches of government. *See Baker v. Carr*, 369 U.S. 186, 210–11, 82 S.Ct. 691, 706, 7 L.Ed.2d 663 (1962);[1] *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 165–66, 2 L.Ed. 60 (1803).[2] Preventing such intervention preserves the integrity of functions lawfully delegated to political branches of the government and avoids undue judicial involvement in specialized operations in which the courts may have little knowledge and competence. *See Koohi v. United States*, 976 F.2d 1328, 1331 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2928, 124 L.Ed.2d 679 (1993); 2A *Federal Procedure* § 3:702 (1994).

■ However, claims involving policies and decisions promulgated by government officials or entities are not automatically barred from judicial review as nonjusticiable political issues. *Ukrainian–American Bar Ass'n v. Baker*, 893 F.2d 1374, 1380 (D.C.Cir. 1990). If a claim involves the interpretation of a statute or questions the constitutionality of a particular political policy, courts are acting within their authority in scrutinizing such claims "so long as there are ... 'judicially discoverable and manageable standards for resolving' the dispute." *Id.* (quoting *Baker v. Carr*, 369 U.S. at 217, 82 S.Ct. at 710) (holding court proper forum for plaintiff's First Amendment claim). *See, e.g., Baker v. Carr*, 369 U.S. at 228, 82 S.Ct. at 716 (complaint about reapportionment of state legislative districts justiciable under Equal Protection Clause); *Chiles v. Thornburgh*, 865 F.2d 1197, 1216 (11th Cir.1989) (claim alleging improper operation of detention center justiciable because resolution requires interpretation of statutes and Constitution); *State Highway Comm'n v. Volpe*, 479 F.2d 1099, 1106 (8th Cir.1973) (claim concerning executive branch's power to control expenditures justiciable because resolution turns on interpretation of Federal–Aid Highway Act).

■ The political question doctrine, along the lines suggested by the foregoing federal court decisions, is equally applicable to prevent interference by Utah state courts into the powers granted to the executive and legislative branches of our state and local governments.[3] Courts must hold "strictly to

---

**1.** In *Baker v. Carr*, the Supreme Court explored the political question doctrine in considerable depth, and identified political question issues as involving

> a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

369 U.S. at 217, 82 S.Ct. at 710.

**2.** In *Marbury*, the Supreme Court stated:

> By the constitution of the United States, the President is invested with certain important political powers, in the exercise of which he is to use his own discretion, and is accountable only to his country in his political character and to his own conscience.... [W]hatever opinion may be entertained of the manner in which executive discretion may be used, still there exists, and can exist, no power to control that discretion.

5 U.S. at 165–66.

**3.** The Utah Constitution explicitly establishes separation of powers between the legislative, judicial, and executive branches at the state level. Utah Const. art. V, § 1. *See, e.g., State v. Bishop*, 717 P.2d 261, 263–64 (Utah 1986) (discussing separation of powers in context of minimum mandatory sentencing). Municipalities, as politi-

an exercise and expression of [their] delegated or innate power to interpret and adjudicate." *Trade Comm'n v. Skaggs Drug Ctrs., Inc.*, 21 Utah 2d 431, 439, 446 P.2d 958, 963 (1968).

In adhering to this restriction on its judicial power, the Utah Supreme Court has noted that a municipal board's decisions involving the "necessity, expediency or propriety in opening a public street is a political question and in absence of fraud, bad faith, or abuse of discretion[, the] action of such boards will not be disturbed by the courts." *Bountiful v. Swift*, 535 P.2d 1236, 1238 (Utah 1975). Nonetheless, the Court in that case went on to analyze whether the city of Bountiful had abused its discretion in exercising eminent domain to complete a public road and whether the city had proceeded within the statutory limitations placed upon its control over public roadways. *Id.*

### 2. Justiciability of Golfers' Complaint

■ The Golfers contend that city officials "do not have the 'discretion' to break the law," and that their complaint only seeks judicial determination of the legality of the City's actions—not judicial interference in the City's operations or decisional process. The Golfers' contention is well-taken.

■ While the City, through its elected and appointed officials, is accorded broad powers to establish and maintain all manner of services and facilities for its residents, *see* Utah Code Ann. § 10–15–4 (1992), its activities must nonetheless comport with relevant constitutional and statutory requirements. *See Bountiful*, 535 P.2d at 1238. Thus, all litigation that concerns discretionary decisions made by political officials cannot be dismissed out of hand as raising "political

questions" exempt from judicial scrutiny. *See Ukrainian–American Bar Ass'n v. Baker*, 893 F.2d 1374, 1380 (D.C.Cir.1990).

In the instant case, the trial court erred in characterizing all nine counts of the Golfers' complaint as raising purely political issues not within the purview of the judiciary. While their complaint and proffered clarifying documents are, as stated by the trial court, something of "a jumble," the Golfers nonetheless present legal questions for which "manageable standards" for resolution exist. *See id.*

■ For example, Count I of the complaint alleges that the changes in the manner in which the City handles golf course revenues results in unequal treatment of the Golfers as a group, thereby violating equal protection provisions of the United States Constitution and the Utah Constitution. Whether the City's actions pass constitutional muster is certainly a justiciable issue,[4] requiring the court's scrutiny under the "rational basis test" absent involvement of a fundamental right or suspect classification. *See Day v. State ex rel. Dep't of Pub. Safety*, 882 P.2d 1150, 1159 (Utah App.1994), *cert. granted*, 892 P.2d 13 (Utah 1995).

Similarly, Counts V and VII allege that the City violated state statutes related to its responsibilities for the operational and fiscal management of recreational facilities. *See* Utah Code Ann. §§ 10–6–135, 11–2–7 to –8 (1992). The Golfers allege that the Golf Enterprise Fund was wrongfully disbanded and its funds improperly transferred, actions which they contend would require compliance with the procedures found in section 10–6–135(3)(d) governing transfers of monies from an enterprise fund. Their complaint also

cal subdivisions of the state, *see* Utah Code Ann. § 10–1–201 (1992), are also subject to separation of powers notions in the context of their legislative/administrative operations and the state judiciary. *See, e.g.*, Utah Code Ann. § 10–3–101 (1992) (municipality's governing bodies exercise legislative and executive powers); *Xanthos v. Board of Adjustment*, 685 P.2d 1032, 1034–35 (Utah 1984) (courts will not interfere with board's decisions in complex, specialized area of zoning unless arbitrary or capricious); *Salt Lake County Cottonwood Sanitary Dist. v. Sandy City*, 879 P.2d 1379, 1381–82 (Utah App.1994) (coun-

cil-mayor form of government contemplates separation of legislative and executive powers), *cert. denied*, 890 P.2d 1034 (Utah 1994).

4. Indeed, *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), one of the landmark cases on the political question issue and relied upon by the City, concerned an equal protection claim contesting a Tennessee statute apportioning state legislative districts that the lower court improperly dismissed on political question grounds. *Id.* at 209, 82 S.Ct. at 706.

implicates section 11–2–7, part of the so-called "playground statutes," which contains provisions relating to the financing of recreational facilities.

Accordingly, we conclude that the Golfers' complaint does not challenge purely political decisions that are beyond the scrutiny of the courts.[5]

## CONCLUSION

The trial court erred in its determination that the Golfers' complaint raises only non-justiciable political issues. We reverse and remand for such further proceedings as may now be in order.

BILLINGS and WILKINS, JJ., concur.

---

5.   Our decision here is not to be construed in any way as a judgment that each count of the Golfers' complaint states a claim for which relief can be granted, much less on the ultimate merit of the Golfers' case. It is merely a threshold determination that the case presents issues which are within the power of the Utah judiciary to adjudicate.