2005 UT App 485

**STATE of Utah, Plaintiff and Appellee,**

v.

**Rickie L. REBER, Steven Paul Thunehorst, and Tex William Atkins, Defendants and Appellants.**

**Ute Indian Tribe, Amicus Curiae.**

**No. 20040371–CA.**

Court of Appeals of Utah.

Nov. 10, 2005.

Rehearing Denied March 1, 2006.

Michael L. Humiston, Heber City, for Appellants.

Mark L. Shurtleff, Atty. Gen. and Joanne C. Slotnik, Asst. Atty. Gen., Salt Lake City, for Appellee.

Kimberly D. Washburn, Draper, Tod J. Smith, Boulder, Colorado, and Charles L. Kaiser, Charles A. Breer, and Peter J. Hack, Davis, Graham & Stubbs, LLP, Denver, Colorado, for Amicus Curiae.

Before BENCH, Associate P.J., DAVIS, and ORME, JJ.

BENCH, Associate Presiding Judge:

¶ 1 Defendant Reber appeals his conviction for one count of aiding or assisting in wanton destruction of protected wildlife, a third degree felony in violation of Utah Code sections 23–20–4 and –23. *See* Utah Code Ann. §§ 23–20–4, –23 (2003 & Supp.2005). Defendants Thunehorst and Atkins appeal their conditional pleas of attempted wanton destruction of protected wildlife, a class B misdemeanor. *See id.* We vacate each conviction for lack of state jurisdiction.

## BACKGROUND

¶ 2 During the 2002 deer hunting season in Uintah County, Reber's son shot and killed a large mule deer with Reber's assistance. Later, Reber drove his truck through a Utah Division of Wildlife Resources checkpoint with the trophy buck in the bed of the truck. They did not have a state permit, license, or tag attached to the animal. The State charged Reber with aiding and assisting in the wanton destruction of wildlife. Because Reber's son shot a trophy buck, the crime constituted a third degree felony. *See* Utah Code Ann. § 23–20–4(3)(a). During that same hunting season, Defendant Atkins shot a buck in Uintah County and Defendant Thunehorst assisted him. They were both charged with class A misdemeanors. *See id.* § 23–20–4(3)(b).

¶ 3 Reber filed a motion to dismiss his case for lack of jurisdiction, claiming that he is an Indian and was hunting in Indian Country. Atkins and Thunehorst stipulated with the State that the district court's ruling on jurisdiction in Reber's case would apply to their respective cases. The district court denied Reber's motion, and the jury convicted him. Atkins and Thunehorst entered conditional pleas to class B misdemeanors. Defendants separately appealed, and the Atkins and Thu-

nehorst appeals were consolidated with the Reber appeal.

## ISSUE AND STANDARD OF REVIEW [1]

■ ¶ 4 Defendants assert that the State lacked jurisdiction. Jurisdiction is a question of law, reviewed for correctness, and we accord no particular deference to the district court's decision. *See Skokos v. Corradini*, 900 P.2d 539, 541 (Utah Ct.App.1995).

## ANALYSIS

¶ 5 Defendants claim that the State lacked jurisdiction because they are Indians who exercised federally protected rights on Indian land. The Utah Constitution provides:

The people inhabiting this State do affirm and declare that they forever disclaim all right and title to the unappropriated public lands lying within the boundaries hereof, and to all lands lying within said limits owned or held by any Indian or Indian tribes, and that until the title thereto shall have been extinguished by the United States, the same shall be and remain subject to the disposition of the United States, and said Indian lands shall remain under the absolute jurisdiction and control of the Congress of the United States.

Utah Const. art. III. Therefore, the federal government has jurisdiction over Indian lands until the Congress of the United States relinquishes such right. *See id.*

¶ 6 The State of Utah may assert "jurisdiction over Indians and Indian territory, country, and lands or any portion thereof within this state in accordance with the consent of the United States given by the Act of Congress of April 11, 1968, 82 Stat. 78–80 (Public Law 284, 90th Congress), to the extent authorized by that act and this chapter." Utah Code Ann. § 9–9–201 (2003). Utah Code section 9–9–213 provides for concurrent state and federal jurisdiction over hunting on reservations. *See* Utah Code Ann. § 9–9–213 (2003). In order for section 9–9–213 to apply, and thus allow the State to assert jurisdiction, certain preliminary requirements

must be met. Pursuant to Utah Code section 9–9–202,

[s]tate jurisdiction acquired or retroceded pursuant to this chapter with respect to criminal offenses or civil causes of action shall be applicable in Indian country only where the enrolled Indians residing within the affected area of the Indian country accept state jurisdiction or request its retrocession by a majority vote of the adult Indians voting at a special election held for that purpose.

Utah Code Ann. § 9–9–202 (2003). The court in *United States v. Felter*, 752 F.2d 1505, 1508 n. 7 (10th Cir.1985), noted that "[u]nder current law, Indian tribes must consent to any state assumption of jurisdiction over 'Indian Country.' Although Utah since has indicated its willingness to assume this jurisdiction, no Indian tribe has accepted its offer." *Id.* There is no evidence in the record that the Ute Tribe has held an election accepting state jurisdiction. Thus, section 9–9–213, granting concurrent jurisdiction over hunting, cannot apply.

■ ¶ 7 Both parties agree that the crimes in this case, hunting without a state license, occurred in "Indian Country." "Under 18 U.S.C. § 1151, the Tribe and the federal government have civil and criminal jurisdiction over 'Indian Country.'" *Ute Indian Tribe v. Utah*, 114 F.3d 1513, 1529 (10th Cir.1997) (*Ute Tribe V*). Without the election mentioned above, "state jurisdiction over crimes committed in Indian Country is limited to criminal acts committed 'by non-Indians against non-Indians ... and victimless crimes by non-Indians.'" *State v. Valdez*, 2003 UT App 60, ¶ 4, 65 P.3d 1191 (alteration in original) (quoting *Solem v. Bartlett*, 465 U.S. 463, 465 n. 2, 104 S.Ct. 1161, 79 L.Ed.2d 443 (1984)). If either the defendant or the victim is an Indian, then jurisdiction lies with the tribal or federal courts. *See Valdez*, 2003 UT App 60 at ¶ 4, 65 P.3d 1191. Because we hold that the victim in this case is the Ute Indian Tribe, we need not address whether Defendants are Indians. *See id.*

¶ 8 "The current Uintah and Ouray Reservation is formed from portions of two prior

---

**1.** Defendants raise and address other issues not covered in this opinion. Because we conclude

that the State did not have jurisdiction, we need not address the other issues.

reservations, the Uintah Valley Reservation, which was originally inhabited by the Uintah and Whiteriver Bands of Ute Indians, and the Uncompahgre Reservation, which was originally inhabited by the Uncompahgre Band." *United States v. Von Murdock*, 132 F.3d 534, 540 (10th Cir.1997). "In 1937, . . . the three Bands joined together to form the Ute Indian Tribe of the Uintah and Ouray Reservation, and adopted a constitution and bylaws." *Id.* (footnote omitted). In 1950, representatives from each of the Bands "signed a series of five tribal resolutions which completed the transition, which began with the constitution, from loosely-knit Bands to [the] unified Ute Tribe." *Hackford v. Babbitt*, 14 F.3d 1457, 1461 (10th Cir.1994). The constitution specified that the separate Bands ceased to exist outside the Ute Tribe, and the Ute Tribe maintained jurisdiction over the reservation areas and the hunting and fishing rights.[2] *See Von Murdock*, 132 F.3d at 541.

¶ 9 The State asserts that it was the victim in this case, and because the State is not an Indian, state courts have jurisdiction over the offense. The State, however, is not the victim. The State concedes in its brief that the crime took place "in Uintah County on land that was within the original boundaries of the Uncompahgre Reservation and is 'Indian Country.'" There were disputes as to whether the 1894 and 1897 Acts of Congress disestablished the Uncompahgre Reservation. *See Ute Indian Tribe v. Utah*, 773 F.2d 1087, 1090–93 (10th Cir.1985) (*Ute Indian Tribe III*). In *Ute Indian Tribe III*, however, the court held that the acts did not "disturb the ownership of the land by the tribal group." *Id.* at 1092. The original Uncompahgre Reservation is therefore considered Indian Country, which falls under the Ute Tribe's civil

and criminal jurisdiction. *See Ute Indian Tribe V*, 114 F.3d at 1530 (confirming *Ute Indian Tribe III* that the tribe and federal government retained jurisdiction over the Uncompahgre Reservation). Thus, Defendants shot the deer in Indian Country governed by the Ute Tribe.

¶ 10 Alternatively, the State asserts that the crime is victimless. A victimless crime is a "[t]erm applied to a crime which generally involves only the criminal, and which has no direct victim, as in the crime of illegal possession of drugs." Black's Law Dictionary 1085 (6th ed.1991). For purposes of Indian law, it has been emphasized that victimless crimes must be "truly victimless." William C. Canby, Jr., *American Indian Law* 166 (3d ed.1998). "Crimes against Indian property interests are not victimless even though no Indian person is directly assaulted; Indian interests are affected and that fact places the crime within the exclusive jurisdiction of the federal government." *Id.*

¶ 11 "The right to hunt and fish on reservation land is a long-established tribal right." *United States v. Felter*, 752 F.2d 1505, 1509 (10th Cir.1985). Additionally, "'[a]side from the right to hunt or fish on tribal lands to the exclusion of others, the tribe possesses the discretion inherent in the police power to regulate and allocate the fish and game resources as it sees fit, within the constraints imposed by law.'" *Id.* at 1511 (quoting *United States v. Felter*, 546 F.Supp. 1002, 1023 (D.Utah 1982)). Thus, the Ute Tribe has a regulatory interest over hunting and fishing on the land it governs. Because Defendants' acts of hunting on Indian Country affected the Ute Tribe's regulatory interest, the tribe is the victim.[3]

---

2. The original reservation "was created by executive order and approved by an act of Congress." *Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1202 (10th Cir.2002) (footnote omitted). The act set apart the Uintah Valley for "the permanent settlement and exclusive occupancy of Utah Indian tribes [and] recognized and guaranteed the Indian rights of the tribes who settled there." *Id.* Those rights include the right to hunt. *See id.* ("'As a general rule, Indians enjoy exclusive treaty rights to hunt and fish on lands reserved to them . . . .'" (citation omitted)).

3. An argument might also be made that the Ute Tribe had a property interest in the wildlife. In *United States v. Von Murdock*, 132 F.3d 534 (10th Cir.1997), the court stated that "'[t]ribal rights in property are owned by the tribal entity, . . . including hunting and fishing rights.'" *Id.* at 538 (quoting *United States v. Felter*, 546 F.Supp. 1002, 1021 (D.Utah 1982)). In Utah Code section 9–9–211, our legislature recognized a property right, noting that when a person goes on an Indian reservation and participates in hunting without proper authority then all "game . . . in the defendant's possession shall be forfeited to

¶ 12 In holding that the defendant in *Von Murdock* was not an Indian, the 10th Circuit court asserted jurisdiction and affirmed the conviction for violating 18 U.S.C. § 1165, which prohibits hunting on land belonging to an Indian tribe without permission. *See Von Murdock*, 132 F.3d 534 (10th Cir.1997). Likewise, in *Felter*, the court found that because the defendant no longer maintained Indian status, the federal court could assert jurisdiction rather than the tribal court. *See Felter*, 752 F.2d 1505. The *Felter* court noted "that 18 U.S.C. § 1165 is not applicable to tribal members who hunted in violation of tribal regulation. Tribal jurisdiction over such minor offenses remains exclusive." *Id.* at 1512 n. 11 (quoting *Felter*, 546 F.Supp. at 1026). It remains clear, however, that "Indian tribes lack jurisdiction to try and punish non-Indians for criminal offenses, and [thus,] 18 U.S.C. § 1165 was designed to fill the gap in enforcement powers as to non-Indians hunting or fishing on tribal or other Indians lands without tribal permission." *Id.* The *Felter* court thus reasoned that an Indian hunting on Indian lands is under tribal jurisdiction, but a non-Indian hunting on Indian lands is under federal jurisdiction. Nothing in *Von Murdock* or *Felter* suggests that state courts can ever assert jurisdiction over hunting violations committed on Indian lands.

## CONCLUSION

¶ 13 We conclude that the crimes occurred in Indian Country governed by the Ute Tribe. Because the Ute Tribe is the victim, the State does not have jurisdiction. We therefore vacate the convictions.

¶ 14 WE CONCUR: JAMES Z. DAVIS and GREGORY K. ORME, Judges.

the tribe." Utah Code Ann. § 9–9–211 (2003). Similarly, pursuant to its jurisdiction over the land, the Ute Tribe claims a property interest in the wildlife. Section 8–1–3(1) of the Ute Law and Order Code states:

> All wildlife now or hereafter within the Uintah and Ouray Reservation, not held by private ownership legally acquired, and which for pur-

poses of this Code shall include all big game animals ... are hereby declared to be the property of the Ute Indian Tribe.

Ute Law and Order Code § 8–1–3(1); *cf.* Utah Code Ann. § 23–13–3 (2003) ("All wildlife existing within this state, not held by ownership and legally acquired, is the property of the state.").