2007 UT 36

**STATE of Utah, Plaintiff, Petitioner, and Cross–Respondent,**

v.

**Rickie L. REBER; Tex William Atkins; and Steven Paul Thunehorst, Defendants, Respondents, and Cross–Petitioners.**

**State of Utah, in the interest of C.R., a person under 18 years of age.**

Nos. 20060299, 20060304.

Supreme Court of Utah.

April 24, 2007.

Mark L. Shurtleff, Att'y Gen., Joanne C. Slotnik, Asst. Att'y Gen., Salt Lake City, Edwin T. Peterson, Vernal, for plaintiff.

Michael L. Humiston, Heber City, for defendants and C.R.

Kimberly D. Washburn, Draper, Tod J. Smith, Boulder, CO, Charles L. Kaiser, Charles A. Breer, Peter J. Hack, Denver, CO, for amicus Ute Indian Tribe.

On Certiorari to the Utah Court of Appeals

WILKINS, Associate Chief Justice:

¶ 1 The State seeks review of the court of appeals' decision vacating the convictions of Defendants Reber, Thunehorst, and Atkins. Reber was convicted of aiding or assisting in the wanton destruction of protected wildlife in violation of Utah Code sections 23–20–4 and –23. Thunehorst and Atkins were each convicted of attempted wanton destruction of protected wildlife. The juvenile case against Reber's son, C.R., has been consolidated with this case for purposes of review.

¶ 2 In vacating the convictions, the court of appeals concluded that the State lacked jurisdiction. We disagree, and accordingly reverse.

## BACKGROUND

¶ 3 During the 2002 deer hunting season, Reber's son shot and killed a large mule deer with Reber's assistance. While transporting the deer, Reber was stopped at a checkpoint in Uintah County where the Utah Division of Wildlife Resources was checking for chronic wasting disease in deer. Conservation officers saw the large buck in the truck bed with no state hunting permit, license, or tag attached to the animal. Because Reber's son, C.R., had killed a trophy buck, the State charged Reber with aiding and assisting in the wanton destruction of wildlife, a third degree felony under Utah Code section 23–20–4(3)(a). C.R. was referred to juvenile court.

¶ 4 During the same hunting season, Atkins shot a buck in Uintah County, and Thunehorst assisted him. They were both charged with class A misdemeanors under Utah Code section 23–20–4(3)(b).

¶ 5 Reber filed a motion to dismiss his case, claiming that he is an Indian and was hunting in Indian country and that the State therefore lacked jurisdiction over him. Atkins and Thunehorst made the same claims but stipulated that the district court's ruling

on Reber's motion would apply to their cases.[1] The district court denied Reber's motion, and a jury convicted him. Atkins and Thunehorst entered conditional pleas to class B misdemeanors. All three adult parties appealed to the Utah Court of Appeals, and their appeals were consolidated. C.R., also asserting a lack of State jurisdiction, was adjudicated delinquent on the same basis. He also seeks review.

¶ 6 The court of appeals vacated the convictions. The court noted that a state has jurisdiction over crimes that occur in Indian country only if neither the defendant nor the victim is Indian. The court of appeals determined that because the crimes did in fact occur in Indian country, and because the Ute Indian Tribe was the victim of the crimes, the State lacked jurisdiction. Having already determined that the State lacked jurisdiction, the court of appeals did not reach defendants' Indian status claims.

¶ 7 We granted certiorari to determine whether, due to either a regulatory interest over hunting or a property interest in wildlife, the Ute Indian Tribe is a victim of illegal hunting within Indian country. We also granted certiorari to determine whether Defendants have sufficiently demonstrated that they are Indians and, as such, are outside the jurisdiction of the State for acts committed in Indian country.

## STANDARD OF REVIEW

¶ 8 On certiorari, we review the decision of the court of appeals, not that of the the trial court.[2] Whether the district court or the juvenile court has jurisdiction is a question of law that we review for correctness, giving no deference to the lower court.[3]

## ANALYSIS

 ¶ 9 All parties agree that the land on which the crimes occurred in this case was part of Indian country as defined by federal

---

1. Because Thunehorst and Atkins stipulated that rulings made with respect to jurisdiction and Indian status in Reber's case would be binding on them, we base our analysis on the facts in Reber's case.

2. *State v. Norris*, 2007 UT 6, ¶ 10, 152 P.3d 293.

3. *Id.*

statute.[4] The United States Supreme Court has described the extent to which states may exercise jurisdiction over crimes committed in Indian country. "Within Indian country, state jurisdiction is limited to crimes by non-Indians against non-Indians and victimless crimes by non-Indians."[5] This crime was not committed against a "non-Indian." Either the acts charged here are victimless, or the victim is the Ute Indian Tribe. Consequently, the State has jurisdiction only if Defendants are non-Indians and if this was a victimless crime.

¶ 10 The court of appeals concluded that "[b]ecause Defendant's acts of hunting on Indian country affected the Ute Tribe's regulatory interest, the tribe is the victim."[6] The court also suggested that, in addition to the regulatory interest, "[a]n argument might also be made that the Ute Tribe had a property interest in the wildlife" sufficient to make it a victim.[7] We disagree and conclude that Defendants are non-Indians who committed a victimless crime within Indian country but not on Indian land and that, therefore, the State has jurisdiction.

## I. DEFENDANTS' ACTIONS CONSTITUTE A VICTIMLESS CRIME

### A. The Ute Tribe's Regulatory Interests Were Not Violated

■ ¶ 11 All parties agree that the animals were killed in Indian country. Indian country is defined by Congress in 18 U.S.C. section 1151 as lands within the historic tribal boundaries. Indian country today may, and often does, include lands lawfully held in fee by non-Indians, as well as lands held by tribes, Indians individually, or others in trust for Indians. It may also contain, as in this instance, federal lands under the auspices of the Bureau of Land Management or the National Forest Service.

¶ 12 With respect to the Indian country border that encompasses the scene of these crimes, and the character of the contained land, there has been much litigation. Defendants argue that under the most recent decision on this issue, *Ute Indian Tribe of Uintah & Ouray Reservation v. Utah* ("*Ute Tribe V*"),[8] the State of Utah has no jurisdiction in this case. It does, in fact, appear that *Ute Tribe V* offers support for Defendants' position. In that case, the United States Circuit Court for the Tenth Circuit states, "[T]he Tribe and the federal government retain jurisdiction over all trust lands, the National Forest Lands, [and] the Uncompahgre Reservation. . . . [9] The State [has] jurisdiction over the fee lands removed from the Reservation under the 1902–1905 allotment legislation."[10]

¶ 13 Were we to accept Defendants' reading of *Ute Tribe V*, the State of Utah would be without jurisdiction, since it is undisputed that the crimes took place within the original boundaries of the Uncompahgre Reservation. However, the crime scene was either on lands owned by the State or on National Forest land, miles from the nearest land owned by any Indian or Indian tribe. Nevertheless, the language of *Ute Tribe V* gives us pause.

¶ 14 Fortunately, the United States Supreme Court has given further guidance. In *Montana v. United States*,[11] the Court held that an Indian tribe's authority to regulate fishing and hunting "only extend[s] to land on which the Tribe 'exercises absolute and undisturbed use and occupation'" and "that

---

**4.** 18 U.S.C. § 1151 ("[T]he term 'Indian country' . . . means all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation. . . .").

**5.** *Solem v. Bartlett*, 465 U.S. 463, 465 n. 2, 104 S.Ct. 1161, 79 L.Ed.2d 443 (1984) (citation omitted).

**6.** *State v. Reber*, 2005 UT App 485, ¶ 11, 128 P.3d 1211.

**7.** *Id.* at n. 3

**8.** 114 F.3d 1513 (10th Cir.1997).

**9.** The Uncompahgre Reservation is now the southern section of today's Uintah and Ouray reservation. *United States v. Von Murdock*, 132 F.3d 534, 540 (10th Cir.1997).

**10.** *Ute Tribe V*, 114 F.3d at 1530.

**11.** 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981).

power cannot apply to lands held in fee by non-Indians."[12]

¶ 15 We are compelled to read *Montana* to say that there is a jurisdictional difference between "Indian country" and "Indian lands" or "Indian property owners."[13] The Court concluded that "[s]ince regulation of hunting and fishing by nonmembers of a tribe on lands no longer owned by the tribe bears no clear relationship to tribal self-government or internal relations, the general principles of retained inherent sovereignty [do] not authorize" a tribe to adopt a resolution regulating hunting and fishing.[14] In other words, the Ute Tribe has no regulatory authority to be offended by acts of Defendants here because the acts did *not* take place on Indian land over which the tribe claimed, or could claim, regulatory authority over hunting and fishing.[15]

¶ 16 Although the crimes in this case took place in Indian country, it is undisputed that the land on which the crimes took place is not owned by any Indian or Indian tribe. Because the Supreme Court has held that Indian tribes have no authority to regulate hunting and fishing on non-Indian-owned land, we must conclude that the Ute Tribe has no regulatory interest over hunting by non-Indians on this land.[16] As such, the court of appeals incorrectly relied on that regulatory interest as the basis for concluding that the Ute Tribe was a victim.

### B. The Ute Tribe's Property Interests Were Not Violated

■ ¶ 17 In addition to having no regulatory interest in hunting on the land in question, the Ute Tribe has no property interest in living, roaming wildlife on the land.

Again, we rely upon the authority of the United States Supreme Court. The Court has said that

it is pure fantasy to talk of "owning" wild fish, birds, or animals. Neither the States nor the Federal Government, any more than a hopeful fisherman or hunter, has title to these creatures until they are reduced to possession by skillful capture.[17]

¶ 18 Federal courts have applied the same analysis to Indian tribes: "The fact that fish and game are presently upon an Indian reservation does not negate the state interest in conserving them...."[18] Moreover, "[a] tribe cannot claim to 'own' the fish and game on the reservation."[19] And if not on Indian land, then surely not on non-Indian-owned land. Accordingly, Defendants' acts did not violate any property interest of the Ute Tribe in the wildlife.

¶ 19 Because the Ute Tribe neither has, nor claims, authority to regulate hunting on the land within Indian country at issue in this case, and because the Tribe also has no protected property interest in wildlife, the Ute Tribe is not, and cannot be, a victim of these crimes. Other than the wildlife itself, these crimes have no victims. These are, then, victimless crimes within Indian country but not on Indian land.

### II. DEFENDANTS FAIL TO ESTABLISH THAT THEY ARE INDIANS

■ ¶ 20 Defendants claim to be Indians. We conclude that they are not, as that term has been defined by federal law.

¶ 21 In the 1846 decision *United States v. Rogers*,[20] the Supreme Court established fac-

---

12. *Id.* at 558–59, 101 S.Ct. 1245.

13. *Id.* at 563 n. 12, 101 S.Ct. 1245.

14. *See id.* at 564–65, 101 S.Ct. 1245.

15. Further, in *Solem v. Bartlett,* the Supreme Court indicated that states have jurisdiction over victimless crimes committed by non-Indians in Indian country. 465 U.S. 463, 465 n. 2, 104 S.Ct. 1161, 79 L.Ed.2d 443 (1984). This crime fits that categorization.

16. The Ute Tribe, present and represented by counsel as amicus before us, disclaimed any such regulatory interest.

17. *Douglas v. Seacoast Products, Inc.,* 431 U.S. 265, 284, 97 S.Ct. 1740, 52 L.Ed.2d 304 (1977).

18. *White Mountain Apache Tribe v. Arizona, Dep't of Game & Fish,* 649 F.2d 1274, 1283 (9th Cir. 1981).

19. *Id.*

20. 45 U.S. (4 How.) 567, 11 L.Ed. 1105 (1846); see *State v. Perank,* 858 P.2d 927, 932 (Utah 1992).

tors to be evaluated in determining Indian status. Courts, including ours, have concluded that under *Rogers*, in order to claim the status of an Indian, a person must "(1) [have] a significant degree of Indian blood *and* (2) [be] recognized as an Indian by a tribe or society of Indians or by the federal government."[21] Defendants do not meet either of these requirements.

¶ 22 In applying the *Rogers* factors, we recognized in *Perank* that a person "with less than one-half Indian blood [can qualify as having] a significant degree of Indian blood."[22] However, we have found no case in which a court has held that 1/16th Indian blood, as claimed by defendants, qualifies as a "significant degree of Indian blood."

¶ 23 Even were we to conclude that 1/16th Indian blood meets the requirement in *Rogers*, defendants would still fail to establish their Indian status. Defendants' ancestors, through which they claim Indian blood, were individually listed on the Ute Partition Act final termination roll.[23] In *United States v. Von Murdock*,[24] the United States Court of Appeals for the Tenth Circuit, in addressing the operation and effects of the Ute Partition Act, concluded that an individual born to "parents [who] were listed on the final roll [of the Act]" was "not a member of the Ute Indian Tribe."[25] " 'Nor can the children of a terminated [parent] claim membership in the tribe through [that] parent.' "[26] Because Defendants' ancestors lost their legal status as Indians, Defendants have no Indian blood for purposes of being recognized by an Indian tribe or the federal government. They therefore fail the first element of the *Rogers* test.

¶ 24 Defendants also fail the second element of the *Rogers* test. The Uintah Band, in which they claim membership, is not rec-

ognized as a tribe by the federal government. As a consequence, Defendants' claimed membership in that tribe does not help establish their Indian status under federal law. The Tenth Circuit directly addressed this impact in *Von Murdock*, saying,

> The [Ute Tribe] Constitution thus makes clear that the Bands ceased to exist separately outside the Ute tribe, that jurisdiction over what was formerly the territory of the Uintah Band was to be exercised by the Ute Tribe, and that the rights formerly vested in the Uintah Band were to be defined by the Ute Constitution and exercised by the Ute Tribe. In light of these provisions, [the] argument that the Uintah Band's hunting and fishing rights retain a separate existence and belong only to the Uintah Band is groundless. Even if … the Uintah Band continues to maintain its own identity, under the Ute Constitution the Band does so only within the context of the Ute Tribe.[27]

¶ 25 This same analysis applies to the defendants in this case. Defendants concede that they are not members of the Ute Tribe. They claim to be members of the Uintah Band or Tribe. However, under federal law, the Uintah Tribe no longer has a separate existence apart from the Ute Tribe. As a result, Defendants do not belong to a federally recognized tribe and are not Indians under federal law.

¶ 26 We are bound by the determinations of the United States Supreme Court and the *Rogers* decision. Further, we are not at liberty to decide which individuals are or should be "recognized as an Indian" by Indian tribes or the federal government. Such recognition is at the discretion of those entities.[28] We conclude that, under *Rogers*, De-

---

21. *Perank,* 858 P.2d at 932 (emphasis added).

22. *Id.* at 933.

23. 25 U.S.C. § 677.

24. 132 F.3d 534 (10th Cir.1997).

25. *Id.* at 536.

26. *Id.* (quoting *Chapoose v. Clark,* 607 F.Supp. 1027 (D. Utah 1985)).

27. *Id.* at 541.

28. If an individual wishes to establish Indian status before this court, he must seek recognition as an Indian from a recognized Indian tribe. If, as is the case here, an entire tribe seeks to be recognized, the tribe must look to the federal government for recognition. Absent federal approval, we are not in the position to recognize new tribes, and we must, in accordance with *Rogers,* find against Indian status.

fendants have failed to establish that they are Indians. Defendants do not have "a significant degree of Indian blood," nor are they "recognized as ... Indian[s] by a [federally recognized] tribe or society of Indians or by the federal government." [29]

## CONCLUSION

¶ 27 The State has jurisdiction over these defendants. A state has jurisdiction over crimes committed in Indian country when a non-Indian commits a victimless crime. Defendants are not Indians, as that term has been defined by federal law, and the crimes in these cases were victimless. Accordingly, we reverse the decision of the court of appeals and reinstate the convictions.

¶ 28 Chief Justice DURHAM, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice WILKINS' opinion.