# IN THE SUPREME COURT OF IOWA

No. 19–0177

Filed September 13, 2019

**STATE OF IOWA,**

Appellant,

vs.

**JESSICA RAE STANTON,**

Appellee.

_____

Appeal from the Iowa District Court for Tama County, Richard Vander Mey, Magistrate.

The State appeals dismissal of misdemeanor charges based upon magistrate's interpretation of federal law governing jurisdiction over crimes committed on the Meskwaki Settlement. **REVERSED AND REMANDED.**

Thomas J. Miller, Attorney General, Aaron Rogers, Assistant Attorney General, and Brent D. Heeren, County Attorney, for appellant.

John G. Daufeldt of Daufeldt Law Firm, Conroy, for appellee.

Peter E. Deegan Jr., United States Attorney, Lisa C. Williams, Assistant United States Attorney, and Ann O'Connell Adams, Attorney, U.S. Department of Justice, for amicus curiae United States.

Joshua A. Canterbury, Assistant Attorney General, and Christopher M. Nydle, Lead Prosecutor, for amicus curiae Sac & Fox Tribe of the Mississippi in Iowa.

**APPEL, Justice.**

In this case, an officer of the Meskwaki Nation Police Department filed two cases in Iowa District Court for Tama County alleging that Jessica Rae Stanton committed the misdemeanor crimes of trespass, possession of drug paraphernalia, and violation of a no-contact order while on the Meskwaki Settlement.

Upon review of the complaints, a magistrate concluded that recent federal legislation removed state jurisdiction for crimes committed on the Settlement. As a result, the magistrate dismissed the three pending misdemeanor charges and assessed costs against the Meskwaki Nation. The magistrate further advised that the Tama County Sheriff should consult with the county attorney to determine whether prisoners such as the defendant should even be received and retained in custody by the Tama County Sheriff. The district court further stated that tribal police officers should be instructed by tribal judicial officers to cease and desist from charging persons with violations of the Iowa Code as such charges "will only serve to clog state courts and result in the imposition of court costs upon the Meskwaki Tribe for cases which must be dismissed."

We granted the State's application for discretionary review and expedited consideration of the matter in light of the importance of the issues pending in the case. For the reasons expressed below, we reverse the dismissal of the charges, vacate the remaining portions of the order of the district court, and remand the case to the district court.

## I. Background Facts and Proceedings.

On January 1, 2019, the Meskwaki police filed complaints alleging that Stanton committed the crime of trespass in violation of Iowa Code section 716.8(1) (2018), possession of drug paraphernalia in violation of Iowa Code section 124.414(2), and violation of a no-contact order in

violation of Iowa Code section 664A.7. In all three complaints, the defendant's race, gender, height, and weight were identified.

The complaint alleging possession of drug paraphernalia stated that "Jessica had a glass pipe that was clear/white in color. [T]he glass pipe had drug residue in it." The location of the offense was listed as 1504 305th Street in Tama, Iowa.

The complaint alleging violation of a no-contact order stated that "Jessica and the protected party Joshua arrived at the casino together. They drove to the casino together." As with the complaint for possession of drug paraphernalia, the location of the offense was listed as 1504 305th Street in Tama, Iowa.

The complaint for trespass simply stated that the violation is "Trespass 1st offense." The complaint does not provide further details about the alleged offense. For example, it does not state the owner of the allegedly trespassed property or its location.

The magistrate signed an order sua sponte on the same day the charges were filed. The order was filed the following day. The magistrate noted that the defendant was in custody and the complaints were issued by a Meskwaki police officer "for conduct which allegedly took place on the Meskwaki Settlement." The magistrate also stated that "[f]ederal legislation was recently enacted which removed state jurisdiction for crimes committed on the Settlement." As a result, the magistrate reasoned that lack of state jurisdiction "prohibits tribal police officers, as well as Iowa peace officers, from initiating state criminal charges for conduct on the Settlement regardless of the race or ethnic background of any potential Defendant." Additionally, the magistrate declared that "[a]ny charges for conduct upon the Meskwaki Settlement can be pursued in tribal court or federal court." On this reasoning, the magistrate dismissed the charges.

The magistrate further stated that "[t]he Tama County Sheriff should consult with the County Attorney to determine whether prisoners such as this Defendant should even be received and retained in custody by the Tama County Sheriff." Further, the magistrate stated,

> Tribal police officers should be instructed by tribal judicial officers to cease and desist from charging persons with violations of the Code of Iowa for the reasons that it will only serve to clog state courts and result in the imposition of court costs upon the Meskwaki Tribe for cases which must be dismissed.

The magistrate imposed court costs against the Meskwaki Nation.

The State sought discretionary review of the magistrate's order. We granted discretionary review. We granted the United States and the Sac and Fox Tribe of the Mississippi in Iowa permission to file amici briefs in support of the State of Iowa. Counsel was appointed to represent Stanton. For the reasons expressed below, we reverse the dismissal of the charges, vacate the order, and remand the cases for further proceedings.

## II. Standard of Review.

We review lower court rulings on questions of subject matter jurisdiction for correction of errors at law. *State v. Lasley*, 705 N.W.2d 481, 485 (Iowa 2005). To the extent resolution of the jurisdictional issue requires statutory interpretation, our review is also at law. *Id.*

## III. Discussion.

**A. Introduction.** The magistrate dismissed this case based on a broad legal proposition, namely, that Iowa courts lack jurisdiction over crimes committed on the Meskwaki Settlement "regardless of the race or ethnic background of any potential Defendant." Thus, under the magistrate's order, the state courts lack jurisdiction over all crimes committed on the Meskwaki Settlement, including crimes by non-Indian

defendants that were either victimless or where the victims were non-Indians.[1]

**B. Challenge to Discretionary Appeal Based upon Bypass of Appeal of Magistrate's Order to the District Court.** Stanton asserts that, because the State failed to file a notice of appeal to the district court pursuant to Iowa Rule of Criminal Procedure 2.73, "[e]rror was not preserved." In support of her argument, Stanton claims "a party cannot 'by-pass' the appeal process in simple misdemeanor cases by failing to seek appellate review via the district court." She cites *Vance v. Iowa District Court*, 907 N.W.2d 473, 479 (Iowa 2018), and *In re M.W.*, 894 N.W.2d 526, 532 (Iowa 2017).

The State disagrees. The State points out that under Iowa Rule of Criminal Procedure 2.73(1), a simple misdemeanor appeal may be taken by the State only when an ordinance or statute is found invalid. The State reasons it may seek discretionary review of a magistrate's dismissal of a simple misdemeanor, which amounts to a final order, without an unauthorized appeal of the magistrate's order to the district court.

We agree with the State. Discretionary review is available in an underlying case resulting in "[a] final judgment or order raising a question of law important to the judiciary and the profession." Iowa Code § 814.5(2)(*d*); *see Lasley*, 705 N.W.2d at 485. Because Iowa Rule of Criminal Procedure 2.73(1) limits the State to appeals in simple misdemeanor cases in which a statute or ordinance is found invalid, the

---

[1]As has been previously observed in law, "Criminal jurisdiction . . . in 'Indian country' 'is governed by a complex patchwork of federal, state, and tribal law.' " *Negonsott v. Samuels*, 507 U.S. 99, 102, 113 S. Ct. 1119, 1121 (1993) (citation omitted) (quoting *Duro v. Reina*, 495 U.S. 676, 680 n.1, 110 S. Ct. 2053, 2057 n.1 (1990)). As such, the court uses terms such as "Indian country," and demarcations such as "Indian" and "non-Indian" only for purposes of consistency with the existing legal framework and nomenclature.

State could not appeal the magistrate's order in this case to the district court. Additionally, the magistrate's dismissal of the case without declaring a statute or ordinance invalid is a final order. Further, it would be odd to require the State to pursue an unavailable remedy before seeking discretionary review. We find that this court had jurisdiction to grant discretionary review in this simple misdemeanor matter without the State seeking an unavailable appeal before the district court.

**C. Discussion of the Merits of Sua Sponte Dismissal of Simple Misdemeanor Charges Occurring on the Meskwaki Settlement for Lack of Subject Matter Jurisdiction.**

1. *Relevant statutory history.* In 1896, the State of Iowa tendered to the federal government lands in Tama County which were previously held in trust for the benefit of the Sac and Fox Indians. 1896 Iowa Acts ch. 110. The Meskwaki Settlement in Tama County is now held in trust by the federal government for the benefit of the federally recognized tribe. *See Sac & Fox Tribe of Miss. in Iowa v. Licklider*, 576 F.2d 145, 147–48 (8th Cir. 1978). As a result, the Meskwaki Settlement is "Indian country" under applicable United States Supreme Court precedent. *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 511, 111 S. Ct. 905, 910 (1991); *see State v. Youngbear*, 229 N.W.2d 728, 732 (Iowa 1975), *abrogated on other grounds by State v. Bear*, 452 N.W.2d 430, 432–33 (Iowa 1990). The question in this case is whether the Iowa district court has jurisdiction over the state misdemeanor crimes that allegedly occurred in "Indian country."

The tender of the Tama County land by Iowa to the federal government specifically noted that nothing in the act

> shall be so construed as to . . . prevent [Iowa] courts from exercising jurisdiction of crimes against the laws of Iowa

committed thereon either by said Indians or others, or of such crimes committed by said Indians in any part of this state.

1896 Iowa Acts ch. 110, § 3. Clearly, the provisions in the 1896 Act did not limit the criminal jurisdiction of state courts. And the federal government accepted all limitations on the transfer. *Licklider*, 576 F.2d at 147–49.

As pointed out by the United States and by the Sac and Fox Tribe as amici, whether a court has criminal jurisdiction over offenses committed in "Indian country" "is governed by a complex patchwork of federal, state, and tribal law" that often depends upon whether the defendant or the victim is an Indian. *Negonsott v. Samuels*, 507 U.S. 99, 102, 113 S. Ct. 1119, 1121 (1993) (quoting *Duro v. Reina*, 495 U.S. 676, 680 n.1, 110 S. Ct. 2053, 2057 n.1 (1990), *superseded by statute on other grounds*, Department of Defense Appropriations Act of 1990, Pub. L. No. 101-511, 104 Stat. 1856, *as recognized in Lower Brule Sioux Tribe v. South Dakota*, 917 F. Supp. 1434, 1444 n.8 (D.S.D. 1996)). Prior to 1948, the precedents of the United States Supreme Court consistently held that state courts have jurisdiction over "Indian country" crimes involving non-Indians unless there is a treaty provision or clause in a state's enabling act prohibiting such jurisdiction. *New York ex rel. Ray v. Martin*, 326 U.S. 496, 499–500, 66 S. Ct. 307, 308–09 (1946); *Draper v. United States*, 164 U.S. 240, 242–43, 17 S. Ct. 107, 108 (1896); *United States v. McBratney*, 104 U.S. 621, 622–24 (1881). Further, many other cases stand for the proposition that states have criminal jurisdiction over criminal acts by non-Indians in "Indian country" that are not committed against Indians. *See, e.g., Hilderbrand v. United States*, 261 F.2d 354, 356 (9th Cir. 1958); *Lasley*, 705 N.W.2d at 490; *State v. Kurtz*, 249 P.3d 1271, 1276 n.5 (Or. 2011); *State v. Reber*, 171 P.3d 406, 408 (Utah 2007).

In 1948, however, Congress expanded jurisdiction of state courts over crimes committed on the Meskwaki Settlement. Congress conferred state court jurisdiction

> over offenses committed by or against Indians on the Sac and Fox Indian Reservation in [Iowa] to the same extent as its courts have jurisdiction generally over offenses committed within said State outside of any Indian Reservation[.]

Act of June 30, 1948, ch. 759, 62 Stat. 1161 (1948). Thus, after 1948, Iowa district courts had preexisting jurisdiction over crimes committed on the Meskwaki Settlement involving non-Indians and, *in addition*, over offenses committed by or against Indians.

In 2018, Congress reversed course and repealed the 1948 Act. The 2018 Act in full provides,

> *Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That the Act of June 30, 1948, entitled "An Act to confer jurisdiction on the State of Iowa over offenses committed by or against Indians on the Sac and Fox Indian Reservation" (62 Stat. 1161, chapter 759) is repealed.

Act of Dec. 11, 2018, Pub. L. No. 115-301, 132 Stat. 4395 (2018).

The impact of the 2018 Act is clear. It simply repealed the 1948 expansion of state court jurisdiction. The 2018 legislation left undisturbed state court criminal jurisdiction involving criminal acts involving non-Indians existing prior to the passage of the 1948 Act. And the law prior to the enactment of the 1948 Act provided state court jurisdiction over crimes committed in "Indian country" involving non-Indians. *See, e.g.*, *McBratney*, 104 U.S. at 623–24.

As a result, the magistrate's observation that "[a]ny charges for conduct upon the Meskwaki Settlement can be pursued in tribal court or federal court" is incorrect. If we adopted Stanton's position, no entity would have subject matter jurisdiction in situations in which a non-Indian

offender commits a crime in "Indian country" that is either victimless or against non-Indian victims. As trenchantly noted in *State v. Vandermay*, 478 N.W.2d 289, 291 (S.D. 1991) (Henderson, J., concurring), "If tribal courts have no jurisdiction over non-Indians, if state courts do not, who does? No one, I reckon, and that would be sheer chaos." In addition to the language of applicable statutes, the potential creation of a law enforcement vacuum gives us further reason to reject Stanton's position.

2. *Application of established law to charges in this case.* In this case, the three charges were filed through complaints of the Meskwaki Nation Police Department. The defendant identified in each complaint is Stanton. It is not clear from any of the complaints whether Stanton is a non-Indian. The complaint for violation of a no-contact order lists Joshua as the person protected by the order but does not state whether Joshua is a non-Indian. The trespass complaint does not specifically list the location of the trespass or the property owner of the property subject to the alleged trespass. On appeal, Stanton concedes that the alleged crimes occurred in "Indian [c]ountry."

The magistrate, however, did not find it necessary to inquire further into the facts but simply dismissed the charges with the sweeping assertion that Iowa courts have no jurisdiction over any criminal activity on the Meskwaki Settlement. This proposition is clearly incorrect. The courts of Iowa continue to have jurisdiction over criminal matters arising on the Meskwaki Settlement when the defendant is non-Indian and when the victim or victims are also non-Indians (or when the crimes are victimless.).

Stanton argues that the State of Iowa does not have criminal jurisdiction over any crimes that occur on the Meskwaki Settlement because it has not enacted implementing legislation specifically asserting

such jurisdiction. She suggests that a 1905 report to the Governor by the attorney general indicates that the state's "reserved jurisdiction" over criminal matters in "Indian country" had never been exercised in stating that "[t]his has never been carried out." Opinion from Chas. W. Mullen, Attorney General of Iowa to Hon. Albert B. Cummins, Governor of Iowa regarding *Sac and Fox Indians—Title to Land Held by Them—History of* (Aug. 9, 1905), in Fifth Biennial Report of the Attorney General of the State of Iowa, at 263–67 (B. Murphy, printer 1906). The 1905 report, however, is not a legal opinion. Further, the reference to "[t]his has never been carried out" in the document is ambiguous and is located closer to language describing the transfer of trusteeship and legal title and to the control of the Department of Interior over Indian lands than to a more distant reference to jurisdiction over crimes against Iowa laws on Meskwaki lands. In any event, there is generally no requirement of implementing legislation to trigger state court criminal jurisdiction over crimes committed at any particular geographic location within the state of Iowa. Nothing in the 1896 Act tendering the land to the federal government requires some kind of additional legislative action to the exercise of the reserved criminal jurisdiction over crimes committed in "Indian country." *See* 1896 Iowa Acts, ch. 110, § 3. We decline to require further specific legislative action for the State to assert jurisdiction involving crimes committed on tribal lands by non-Indians involving either victimless crimes or non-Indian victims.

Stanton further suggests that Iowa Code section 1.15A supports her argument that the Iowa courts have no criminal jurisdiction over crimes committed on the Meskwaki Settlement. Iowa Code section 1.15A tenders to the United States "any and all criminal jurisdiction . . . over criminal offenses committed by or against Indians" on the Meskwaki Settlement.

This statutory provision relates solely to crimes "by or against Indians," and not to crimes by non-Indians or to crimes that are victimless or have a non-Indian victim.

In light of the above, we reverse the dismissal of the three complaints and the order imposing costs against the tribe and remand the matter to the district court for further proceedings. We also vacate the order to the extent it directs the Tama County Sheriff to consult with the county attorney and states that tribal police should be instructed to cease and desist from charging persons with violations of the Iowa Code.

We do not address a number of issues that are not ripe for adjudication given the limited record and the nature of the magistrate's sua sponte dismissal of this case. We do not address whether, in fact, Stanton is an Indian or non-Indian. There was no hearing below on this or any other issue. This potential factual issue was not considered or relied upon by the district court and it is not properly before this court in this discretionary appeal.

We also do not address whether any of the crimes should be considered "victimless." *See generally Solem v. Bartlett*, 465 U.S. 463, 465 n.2, 104 S. Ct. 1161, 1163 n.2 (1984) (noting that states have jurisdiction over victimless offenses by non-Indians); *People v. Collins*, 826 N.W.2d 175, 180 (Mich. Ct. App. 2012) (suggesting that there is no federal jurisdiction for victimless crimes on Indian country committed by a non-Indian); *Vandermay*, 478 N.W.2d at 290–91 (majority opinion) (noting that the state has jurisdiction over victimless crimes committed by non-Indians). We do not determine whether there is a victim for the trespass alleged in the complaint, the identity of such a victim, or whether the identity of a victim prevents the exercise of jurisdiction over the crime in Iowa district court. We do not determine whether there is a victim for

violation of a no-contact order, or whether any such victim is an Indian or a non-Indian. All these questions, and any others that may arise, are left for further proceedings on remand.

### IV. Conclusion.

For the above reasons, the magistrate's order dismissing the complaints and imposing costs on the Meskwaki Nation are reversed. To the extent the order provides instructions to the Tama County Sheriff, the Tama County Attorney, and the tribal officers, the order is vacated. The matter is remanded to the district court for further proceedings.

**REVERSED AND REMANDED.**